Darrell J. York, Esq. (SBN 145601)
Sarah L. Garvey, Esq. (SBN 202491)
Law Offices of York & Garvey
137 N. Larchmont Blvd., #506
Los Angeles, CA 90004
Telephone: (866) 908-2121
Facsimile: (877) 221-3306
Email: djylaw@gmail.com
Email: sarahgarvey@yahoo.com

Kevin G. Little, Esq. (SBN 149818)
1099 E. Champlain Drive, Suite A-124
Fresno, CA 93720
Telephone: (559) 708-4750
Facsimile:  (559) 420-0839
Email:  kevinglittle@yahoo.com
Attorneys for Micah Jessop and Brittan Ashjian

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAH JESSOP and BRITTAN ASHJIAN,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY OF FRESNO, FRESNO POLICE OFFICER DERIK KUMAGAI; FRESNO POLICE OFFICER T. CANTU; and FRESNO POLICE SERGEANT CHASSIN;<br><br>        Defendants. | No. 7:15-cv-00316 DAD-SAB<br><br>(Honorable Dale A. Drozd)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS** |

TO THE HONORABLE COURT:

     Plaintiffs, Micah Jessop and Brittan Ashjain, through their counsel, hereby provide the attached statement of uncontroverted facts in support of his opposition to defendants' motion for summary judgment or adjudication.

1

| DEFENDANT'S PROPOSED UNCONTROVERTED MATERIAL FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 1. In calendar year 2013, Derik Kumagai was employed as a police officer with the City of Fresno Police Department. Kumagai had been so employed for approximately thirteen (13) years, and during that time period was assigned to a number of units within the department, such as, Patrol Bureau, District Crime Suppression Team, Training Unit, and the Special Investigations Bureau Vice/Intel Unit. | Undisputed. However, Det. Kumagai is no longer permitted to be a law enforcement officer based on his felony conviction in a recent federal prosecution, *United States v. Kumagai*, No. 1:14-CR-00061. Kumagai admitted engaging in illegal acts with drug dealers and in soliciting or accepting $120,000 in suspected drug proceeds as bribes to "close cases." *See United States v. Kumagai*, No. 1:14-CR-00061., Dkt. No. 49, pp. 14-16. |
| 2. In 2013, while assigned to the Special Investigations Bureau Vice/Intel Unit, Derik Kumagai's duties included, among other things, investigation of illegal gambling activities. | Undisputed. |
| 3. In February 2013, Derik Kumagai received information from an Investigator with the California Department of Alcoholic Beverage Control regarding a possible illegal gambling machine located within a liquor store in the City of Fresno. The machine was described as a "Coin Pusher", which was illegal to operate under California Penal Code Sections 330a, 330b, and 330.1. Essentially, a "Coin Pusher" is a device which awards coins or prizes to a player as a result an element of hazard or chance. After receiving this information, Kumagai | Undisputed. However, the illegality of coin pusher machines had been subject to question until the Bureau of Gambling Control decided in Nov. 2010 that they were games of chance rather than skill. *See* Exhibit 1, BGC Law Enforcement Advisory No. 10, attached hereto. *See also* Cantu Deposition, 10:9-14. The mentioned Penal Code provisions are all lower level misdemeanors, with maximum fines of $1000 and maximum jail terms of 6 months for a first offense. |

| | |
|---|---|
| began an investigation into the suspected illegal gambling activity. | |
| 4. The investigation expanded several months, and included, among other things, background investigations, undercover operations, surveillance operations, seizure of illegal gambling devices, and application and issuance of search warrant for a GPS tracking device. Several members of the Special Investigation Bureau Vice/Intel Unit assisted in the investigation, including supervisor, Fresno Police Officer Sergeant Curt Chastain. | Undisputed. |
| 5. During the investigation surveillance, Unit members observed, among other things, Brittan Ashjian emptying coin currency from a "Coin Pusher" machine located in a store; Mr. Ashjian transporting and unloading a "Coin Pusher" machine at the business address in Fresno for "ATM Online Services LLC,"; a Google map image depicting a "Coin Pusher" machine in the garage of Mr. Ashjian's residence; Mr. Ashjian servicing ATM machines in locations where "Coin Pusher" machines were also located; Mr. Ashjian going into a bank accompanied by Micah Jessop, leaving with bank bags, and going to and entering various stores; and receiving information from various store owners that either Brittan Ashjian or Micah Jessop were the people responsible for "Coin Pusher" machines located in their stores; and receiving information from another law | Undisputed. |

| | |
|---|---|
| enforcement agency regarding the seizure of a "Coin Pusher" machine from a store in the Central Valley, with the responsible person as Micah Jessop. | |
| 6. As a result of the investigation, Derik Kumagai had reason to believe that Brittan Ashjian and Micah Jessop were operating an illegal gambling operations, which included the placement of, and profiting from, illegal "Coin Pusher" machines in various stores throughout Fresno and the Central Valley. Kumagai further believed that Mr. Ashjian and Mr. Jessop operating the illegal gambling operation in conjunction with their ATM business, "ATM Online Services, LLC", which had a business address of 325 E. Simpson Avenue, Fresno, California, and that they were possibly comingling the proceeds derived from the illegal "Coin Pusher" machines, with the proceeds derived from the ATM business. In certain store locations, "Coin Pusher" machines were found to be operating along with "ATM Online Services, LLC". As such, Kumagai had reason to believe that Brittan Ashjian and Micah Jessop were violating California Penal Code Section 186.10. | Undisputed. |
| 8. The Search Warrant and Affidavit was reviewed and signed on September 9, 2013, by the Honorable Judge Dale Ikeda of the Fresno Superior Court. | Undisputed. |
| 9. On September 10, 2013, at approximately 8:00 a.m., Derik | Undisputed. |

| | |
|---|---|
| Kumagai conducted a Search Warrant pre-briefing at the Fresno Police Department Special Investigations Bureau. Three (3) teams of Fresno police officers (approximately 16 officers), and members of other law enforcement agencies, attended the briefing. Three search teams were formed, and each one was assigned to one of the three locations associated with Mr. Ashjian and Mr. Jessop named in the Search Warrant. A Case Agent was assigned to lead each of the three search teams. The Case Agents were: Det. Tomas Cantu for 325 E. Simpson Avenue, Fresno, California (ATM Online Services, LLC); Detective Belinda Anaya for 5007 West Pinedale Avenue, Fresno, Californa (Mr. Ashjian's residence); and Det. Annette Arellanes for 2552 West Stuart Avenue, Fresno, California (Mr. Jessop's residence). | |
| 10. After the Search Warrant pre-briefing concluded, at approximately 9:45 a.m., the Search Warrant was simultaneously serviced at the three locations associated with Mr. Ashjian and Mr. Jessop, as well as their persons and vehicles. | Undisputed. |
| 11. After service of the Search Warrant began, as the Lead Investigator, Derik Kumagai first responded to the 325 E. Simpson Avenue, Fresno, California address of ATM Online Services, LLC. Kumagai spent most of his time at this location interviewing Mr. Jessop and Mr. Ashjian. | Disputed. Derik Kumagai was seen counting the money inside the Simpson residence by Plaintiff Jessop. Jessop Dep. Vol. 1, 105:20-25; 106:1-12. |

| | |
|---|---|
| Kumagai did not physically search the premises or vehicles at the location. Kumagai did not physically seize any of the evidence discovered at the location. Kumagai did not physically remove the evidence seized from the location by the assigned search team. During the search, some officers did point out to Kumagai some of the currency that had been discovered during the search. However, Kumagai did not seize, count, remove, or transport such currency or coins from the location. | |
| 12. The Case Agent for the 325 E. Simpson Avenue, Fresno, California address of ATM Online Services, LLC, Det. Tomas Cantu, prepared a Fresno Police Department Search Evidence and Receipt List identifying all the evidence seized at the location by the search team, including, but not limited to, any currency. A true and correct copy of the Search Warrant Evidence and Receipt List is attached to Decl. Kumagai as Exhibit "B". | Disputed. The Search Evidence and Receipt List did not list all the currency seized and failed to list $131,380.00 in currency seized and Plaintiffs' do not agree that the Evidence and Receipt List identifies all the money that was seized. Jessop Dep. Vol. 1, 91: 10-16; 91:23-25; 92:1-3; 105:10-13 |
| 13. While at the 325 E. Simpson Avenue location, Derik Kumagai received calls from the other Case Agents progress of serving the Search Warrant at the two other locations. For example, Det. Annette Arellanes called Kumagai from the 2552 West Stuart Avenue location, and advised that her search team had located, among other things, a coin collection, and she asked if the coin collection should be seized | Disputed. Kumagai, Chastain and Cantu went to all the search locations. Arrellanes Dep., 11:27-12:11. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. |

| | |
|---|---|
| under the Search Warrant. Kumagai told Det. Arellanes that the coin collection should not be seized, and should be left at the location. Det. Arellanes agreed to do so. | Kumagai went alone into the bedroom where the coins and currency were, and no one has seen them since. *See* Declaration of Kristine Jessop. |
| 14. Derik Kumagai left the 325 E. Simspon Avenue location and proceeded to 2552 West Stuart Avenue Fresno, California, which was Mr. Jessop's residence. The actual search of that location had already concluded. Kumagai met there with Mr. Jessop's wife, Kristine Jessop, and explained the investigation and search to her. Kristine Jessop advised Kumagai, among other things, that there were additional three coin machines located near the wall of the garage of the residence, and she led Kumagai to them. Those machines were included with the evidence seized from the 2552 West Stuart location. Kumagai did not physically search the premises or vehicles at the 2552 West Stuart Avenue location. Kumagai did not physically seize any of the evidence discovered at the location. Kumagai did not physically remove the evidence seized from the location by the assigned search team, other than assist in moving the additional three coin machines identified by Kristine Jessop. Kumagai did not seize, count, remove, or transport any currency or coins from the location. | Disputed. Det. Kumagai was alone in the bedroom with the collectible coins and currency, after which time they were never seen again. *See* Declaration of Kristine Jessop. |
| 15. The Case Agent from the 2552 West Stuart Avenue, Fresno, California | Disputed. After the officers left the location, Plaintiff Jessop discovered that many of his |

7

| | |
|---|---|
| address, Det. Annette Arellanes, prepared a Fresno Police Department Search Warrant Evidence and Receipt List identifying all the evidence seized at the location by the search team, including, but not limited to, any currency. A true and correct copy of the Search Warrant Evidence and Receipt List is attached to the Decl. Kumagai as Exhibit "C". | collectible coins were missing from his home. Jessop Dep. Vol. 1, 135:13-25; 136:1-17. |
| 16. Derik Kumagai left the 2552 West Stuart Avenue location and proceeded to 507 West Pinedale Avenue, Fresno, California, which was Mr. Ashjian's residence. The actual search of that location had already concluded. Kumagai met there with Mr. Ashjian's wife, Tammy Ashjian, and explained the investigation and search to her. Kumagai and Ms. Ashjian discussed, among other things, her knowledge of the coin machines, and her work and salary with ATM Online Services, LLC. Kumagai did not physically search the premises or vehicles at the 507 West Pinedale Avenue location. Kumagai did not physically seize any of the evidence discovered at the location. Kumagai did not physically remove the evidence seized from the location by the assigned search team, other than assist in moving the additional three coin machines identified by Kristine Jessop. Kumagai did not seize, count, remove, or transport any currency or coins from the location. | Disputed. Derik Kumagai was seen counting the money inside the Simpson residence by Plaintiff Jessop. Jessop Dep. Vol. 1, 105:20-25; 106:1-12. Kumagai, Chastain and Cantu went to all the search locations. Arrellanes Dep., 11:27-12:11. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. Kumagai went alone into the bedroom where the coins and currency were, and no one has seen them since. *See* Declaration of Kristine Jessop. |

| | |
|---|---|
| 17. The Case Agent from the 5007 West Pinedale Avenue, Fresno, California address, Det. Belinda Anaya, prepared a Fresno Police Department Search Warrant Evidence and Receipt List identifying all the evidence seized at the location by the search team, including, but not limited to, any currency. A true and correct copy of the Search Warrant Evidence and Receipt List is attached to the Declaration of Kumagai as Exhibit "D". | Undisputed. |
| 18. The evidence seized as a result of the service of the Search Warrant was transported from the search locations to the office of Fresno Police Department Special Investigations Bureau Vice/Intel Unit. Derik Kumagai did not transport such evidence. Detectives of the Unit counted all currency that was seized during the service of the Search Warrant while the office. The counts were performed in the presence of witness Detectives, and not by any one single Detective. The currency seized during the service of the Search Warrant amounted to approximately $50,000.00, and was locked in a Unit office by Sergeant Chastain for safekeeping. | Disputed. $131,380 in currency and collectible coins were seized from the Plaintiffs during the search of their business and residences. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. Also, the exact total seized according to police records is only $37,014, not $50,000. See Kumagai Deposition, 74:10-75:1. |
| 19. The next day, the evidence seized during the service of the Search Warrant, including, but not limited to, the currency seized, was transported from the office of the Special Investigations Bureau Vice/Intel Unit | Disputed. Not all the currency seized was booked into evidence. Only $37,014 of the $131,380 in currency was booked, and the collectible coins were not booked into evidence. |

| | |
|---|---|
| to the Fresno Police Department Property Room for booking by members of the Vice/Intel Unit. Derik Kumagai did not participate in the transport of the evidence to the Property room. Det. Belinda Anaya oversaw the evidence transportation and booking process. Fresno Police Department and Evidence Forms were prepared for the booked evidence. True and correct copies of the Property and Evidence Forms regarding "coin machines" and currency are attached to the Decl. Kumagai as Exhibit "E". | Jessop Dep. Vol. 1, 91:23-25; 92:1-3; 203:15-25; 204:1. |
| 20. Within a few days of the service of the Search Warrant, Derik Kumagai was present at a meeting at the Fresno Police Department Property room where Mr. Jessop and Mr. Ashjian, and their attorneys, were allowed to view the evidence seized during the service of the search warrant, including, but not limited to, all the currency seized. Sergeant Chastain and Fresno Dep. City Attorney Larry Donaldson attended the meeting as well. At no time during this meeting did Mr. Jessop or Mr. Ashjian claim that more than approximately $50,000.00 was seized during the search warrant. | Disputed. Plaintiffs Jessop and Ashjian told Kumagai and others present at the meeting that there was money missing. Jessop Dep. Vol. 1, 161:11-25, 162:22-25; 163:1-23. Ashjian Dep., 101:2-25; 102:1-12; 103-12-20. Plaintiffs contend based on their business records that $131,380 is missing. Deriki Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 Also, the exact total seized according to police records is only $37,014, not $50,000. See Kumagai Dep., 74:10-75:1. |
| 21. After the meeting at the Fresno Police Department | Undisputed. |

| | |
|---|---|
| Property room, and once Mr. Jessop and Mr. Ashjian learned that the potential criminal charges they could be facing including money laundering, both Mr. Jessop and Mr. Ashjian agreed (through their attorneys) to enter into Confidential Informant Contracts with the City of Fresno. | |
| 22. Derik Kumagai had personal contact with Mr. Jessop and Mr. Ashjian while they worked under the Confidential Informant Contracts. At no time did either Mr. Jessop, or Mr. Ashjian, claim that more than approximately $50,000.00 was seized during the service of the Search Warrant. | Disputed. Deriki Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 |
| 23. Derik Kumagai prepared a Fresno Police Department report regarding the investigation and service of the Search Warrant under Case No. 13-060452. A true and correct copy of the report is attached to Decl. Kumagai as Exhibit "F". | Undisputed. |
| 24. Derik Kumagai did not take any currency, coins or property from Mr. Jessop or Mr. Ashjian, or from the locations or vehicles searched under the Search Warrant served on September 10, 2013, as alleged in the Complaint, nor did Kumagai ever take any such currency, coins or property at any time. | Disputed. Derik Kumagai was seen counting the money inside the residence by Plaintiff Jessop. Jessop Dep. Vol. 1, 105:20-25; 106:1-12. Det. Kumagai was alone in the bedroom with the collectible coins and currency, after which time they were never seen again. *See* Declaration of Kristine Jessop. In both instances, Kumagai was the last one seen with the missing items. |

11

| | |
|---|---|
| | Plaintiffs contend based on their business records that $131,380 is missing. Deriki Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 |
| 25. Derik Kumagai has no knowledge of anyone taking any currency, coins or property from Mr. Jessop or Mr. Ashjian, or from the locations orvehicles searched under the Search Warrant served on September 10, 2013, as alleged in the Complaint. | Disputed. Deriki Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep., Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 Disputed. Derik Kumagai was seen counting the money inside the residence by Plaintiff Jessop. Jessop Dep. Vol. 1, 105:20-25; 106:1-12. Det. Kumagai was alone in the bedroom with the collectible coins and currency, after which time they were never seen again. *See* Declaration of Kristine Jessop. In both instances he was the last one with the missing items. |
| 26. When they went to the residence an employee for the business was there. | Undisputed. |
| 27. The business is ATM On-Line Service. | Undisputed. |
| 28. Once the location was secured, Detective Kumagai began speaking with the female employee. | Undisputed. |

| | |
|---|---|
| 29. He made contact with Mr. Jessop. | Undisputed. |
| 30. Detective Kumagai and Mr. Jessop went into the kitchen area of the residence where Detective Kumagai advised him of why he was there. | Undisputed. |
| 31. Mr. Jessop waived his rights. | Undisputed. |
| 32. He questioned Mr. Jessop about his interest and the manner in which the business conducted alongside the ATMs and the coin pushers Mr. Jessop advised him that he had an agreement with Mr. Ashjian about operating the machines and splitting the proceeds. | Undisputed. |
| 33. Detective Kumagai asked Mr. Jessop if he knew the machines were illegal and he was told by Mr. Jessop that he had an idea that they were illegal because they were beginning to get seized by law enforcement. Detective Kumagai asked Mr. Jessop why he didn't contact Fresno Sheriff's office in regard to the coin pusher and he gave Detective Kumagai the locations of the other coin pushers. | Undisputed. |
| 34. The assisting personnel were cataloging and analyzing the items to be seized and collected as evidence. Detective Kumagai was being contacted by assisting case agents at different locations about what need to be done. | Undisputed. |
| 35. Detective Dodd, Detective Lucero and Detective Cantu were telling Detective Kumagai the locations where evidence was located. | Undisputed. |

13

| | |
|---|---|
| 36. Detective Cantu was keeping track of this information. | Disputed. Although in charge of documenting, and purportedly taking photographs, the photographs of the items seized from the Simpson address have vanished.<br>Photos taken of Simpson search (the location where all the money, except Jessop's collectible coins and currency, is missing) inexplicably cannot be located. Chastain Dep., 25:25-27:1; 31:18-32:3; Dodd Dep., 22:2-7. Defendant Cantu, ex-Det. Kumagai's partner, was supposed to be doing the photographing. Dodd Dep., 17:20-23; 19:7-18.<br>The lead case agent, in this case ex-Det. Kumagai, typically decides whether to take photographs. Zarasua Dep., 15:24-16:2 |
| 37. Detective Cantu was making a list. | Undisputed. |
| 38. Detective Kumagai was not present when the money was counted. | Disputed. Derik Kumagai was seen counting the money inside the residence by Plaintiff Jessop.<br>Jessop Dep. Vol. 1, 105:20-25; 106:1-12.<br>Det. Kumagai was alone in the bedroom with the collectible coins and currency, after which time they were never seen again. *See* Declaration of Kristine Jessop.<br>In both instances he was the last one with the missing items. |
| 39. The money was counted at the Simpson location. | Disputed, as the $37,014 listed as being seized is inaccurate. Jessop Dep. Vol. 1, 91:23-25; 92:1-3. |
| 40. Property Evidence Reports were provided to Detective | Disputed. |

| | |
|---|---|
| Kumagai and he left a receipt at that location prior to leaving which had the total amount to be collected. | The property report did not accurately list all the currency seized. Jessop Dep. Vol. 1, 91:23-25; 92:1-3 |
| 41. He left the search warrant receipt with Mr. Ashjian and Mr. Jessop. | Disputed. The documentation of what was seized during the search was inaccurate. Jessop Dep. Vol. 1, 91:23-25; 92:1-3 |
| 42. Detective Kumagai saw the money at the Simpson location. | Undisputed. |
| 43. The money that was seized at the Stuart residence was seized prior to Detective Kumagai's arrival. Assisting personnel had counted it. | Disputed, as the $37,014 listed as being seized is inaccurate. Jessop Dep. Vol. 1, 91:23-25; 92:1-3. |
| 44. He did not see how the money was packaged at the Stuart location. | Undisputed. |
| 45. He was advised by Detective Arellanes about the money. | Undisputed. |
| 46. Detective Kumagai advised Detective Arellanes to leave gold coins at residence. | Disputed. At Kumagai's instructions, the collectible coins an dcurrency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| 47. Approximately $50,000 was seized from both locations. | Disputed. $131,380 in currency was seized and some collectible coins. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. |
| 48. Detective Kumagai believed the $50,000 was connected with | Disputed. Deriki Kumagai was the lead investigator in this |

| | |
|---|---|
| the investigation of money laundering, the commingling of funds with a legitimate business and attempt to clean it up, and the operation of illegal slot machines. | case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 |
| 49. Detective Kumagai through his investigation learned that the suspects were using a business account to convert the coin currency into bill currency. Once that is converted, now once it's commingled, there's no determining on what would be considered clean money or dirty money. | Disputed. Det. Kumagai did not believe that more than $50,000 was involved in the crimes he was investigating. Kumagai only seized approximately $50,000 his investigation, and that is the amount he believed pertained to his investigation. Kumagai Dep., 87:20-23; 88:25-89:12 $37,014 is the actual total amount seized according to the seizure records and receipts. Kumagai Dep., 74:15-75:1. There would have been no basis for seizing nearly three times that amount, plus collectible coins and currency. |
| 50. The bank personnel advised Detective Kumagai that the Plaintiffs were converting coins two to three times a week in the amount of $500 each. | Undisputed. |
| **CURT CHASTAIN** | |
| 51. Curt Chastain has been a Fresno police officer for approximately 30 Years. | Undisputed. |
| 52. He is and was at the time of the incident a supervising sergeant of the Vice Criminal Intelligence Unit. | Undisputed. |
| 53. This case came forward though normal proactive work in the gaming area. There had been a big influx of illegal gaming machines in the city. | Undisputed. |

| | |
|---|---|
| 54. Detective Kumagai came up with a lead that potentially led to a target of who was distributing these machines, thus the investigation began. Detective Chastain was not involved in developing a surveillance plan but showed oversight of it. He would receive verbal updates and, when necessary, did involve himself with some of the surveillance. | Undisputed. |
| 55. He became aware and highly suspected that Ashjian and Jessop where definitely a distributor of the machines. | Undisputed. |
| 56. This organization operated ATM machines and the illegal gambling machines that were located together at some of the locations and were both serviced by Jessop and Ashjian. | Undisputed. |
| 57. He also became aware that the quarter coins collected from the illegal gambling machines were eventually exchanged for cash monies to the Banks where the ATM business did its banking. This led him to believe that the monies received from the illegal business was being commingled with legitimate monies as a way to hide illegal proceeds. This evidences a clear illegal purpose to Launder money in possible violation of Penal Code section 186.10. At the very least a conspiracy to do so is evident from the actions stated. | Undisputed. |
| 58. He had reviewed the briefing sheet prior to the briefing and had made | Disputed. Chastain's role during the searches was to verify that |

| | |
|---|---|
| contact with other units that were going to assist in the service of the warrants.<br>He eventually went to the Simpson Street address and was on the initial team that served the search warrant and stayed in contact with the other locations to see if they were secure, and that the searches were going to start. | money was being counted and documented correctly and to transport the money to the police station and to verify that the amount transported equalled the amount seized. Chastain Dep., 21:23-24:7. |
| 59. At the location he was aware that money was found in the kitchen area and in a Dodge car belonging to Mr. Jessop parked in the driveway. | Undisputed. |
| 60. He was present when money was found in the Dodge car and counted. | Undisputed. |
| 61. He did play a supervisor role to stand there and see what kind of amounts were found and to ensure that there was a witness to it and see that it was being done correctly. | Undisputed. |
| 62. He did verify the operation working on the monetary amounts and show control over it to ensure that it was being handled. And that the next day to see when it was counted again prior to it being taken down into the property room. He was active throughout the day to see what monies were being taken. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized.<br>Disputed. $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1.<br>Kumagai Dep., 25:20-25; 26:25<br>However, only $37,014 was reported seized according to the seizure records and receipts. Kumagai Dep., 74:15-75:1. |
| 63. In addition to what Detective Cantu wrote down as the scribe in the property log he kept mental notes about the quantity of the amount that was located. | Disputed. Chastain recalls there being photographs taken of the items seized at the Simpson location, but they have inexplicably vanished. Photos taken of Simpson search (the |

| | location where all the money, except Jessop's collectible coins and currency, is missing) inexplicably cannot be located. Chastain Dep., 25:25-27:1; 31:18-32:3; Dodd Dep., 22:2-7. Defendant Cantu, ex-Det. Kumagai's partner, was supposed to be doing the photographing. Dodd Dep., 17:20-23; 19:7-18. The lead case agent, in this case ex-Det. Kumagai, typically decides whether to take photographs. Zarasua Dep., 15:24-16:2 |
|---|---|
| 64. He was the person that actually transported the money from the scene to the station. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. Disputed. $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 However, only $37,014 was reported seized according to the seizure records and receipts. Kumagai Dep.,74:15-75:1. Not all of the money made it to the station, apparently. |
| 65. When he left the Simpson location he went to the Stuart location and had taken the money with him. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 However, only $37,014 was reported seized according to |

| | |
|---|---|
| | the seizure records and receipts.  Kumagai Dep., 74:15-75:1.  Not all of the money made it to the station, apparently. |
| 66. He made the decision that he would be the one to keep the monies and locked it up in his vehicle. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. Disputed.  $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 However, only $37,014 was reported seized according to the seizure records and receipts.  Kumagai Dep., 74:15-75:1.  Not all of the money made it to the station, apparently. |
| 67. And he also played a role in verifying that the same amount of money reached the station. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. Disputed.  $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 However, only $37,014 was reported seized according to the seizure records and receipts.  Kumagai Dep., 74:15-75:1.  Not all of the money made it to the station, apparently. |
| 68. And once the money was counted it was put on the receipt that was given to Mr. Jessop. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. |

| | |
|---|---|
| | Disputed. $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 However, only $37,014 was reported seized according to the seizure records and receipts. Kumagai Dep., 74:15-75:1. Not all of the money made it to the station, apparently. |
| 69. When the money was recounted back at the station, the tally was consistent with the evidence logs collected at the particular location. | Disputed. $131,000 was seized from the Plaintiffs and the evidence logs only showed $50,000 was seized. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. |
| 70. While at the Simpson location he had received a call from Sgt. Reynolds and he talked with Detective Arellanes that they had a question regarding collectibles. And he said that was not something that we wanted to take possession of; it wasn't part of this investigation and to leave those items. | Disputed. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| 71. Jessop later made an allegation that he's missing some collectible items and he assured Jessop that there was a protocol for those investigations and that he informed Jessop that he could | Disputed. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to |

| | |
|---|---|
| come down and look at all the monies collected and the properties received and if there was collectible items in there then they would be returned to them because it wasn't our intention to do that. | leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| 72. Later they did go to the property room, where Det. Chastain was present and they viewed the property and no one said there was more money seized than what was shown. | Disputed. Plaintiffs Jessop and Ashjian told Kumagai and others present at the meeting that there was money missing. Jessop Dep. Vol. 1, 161:11-25, 162:22-25; 163:1-23. Ashjian Dep., 101:2-25; 102:1-12; 103-12-20. Plaintiff contend based on their business records that $131,380 is missing. Derik Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 Also, the exact total seized according to police records is only $37,014, not $50,000. See Kumagai Deposition, 74:10-75:1. |
| 73. He is also aware that Mr. Jessop and Mr. Ashjian voluntarily entered into contracts with the City to become confidential informants in exchange for the City not submitting the case to the District Attorneys Office. Plaintiffs also agreed to forfeit $50,000 collected in the searches. | Disputed. Ashjian and Jessop understand that a total of $50,000, not $50,000 each, was forfeited pursuant to the agreement. Ashjian Dep., 114:2-6; 151:6-15; Jessop Dep., Vol. II, 28:24-29:2. |

| | |
|---|---|
| 74. He is not aware of any theft of property including money found at the search locations. | Disputed. Derik Kumagai was the lead investigator in this case and $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for.<br>Jessop Dep. Vol. 1, 203:15-25, 204:1.<br>Kumagai Dep., 25:20-25; 26:25 |
| 75. When someone comes into the Vice Unit, Sgt Chastain wants to ensure that the potential person is a trustworthy and reliable person. He did inquire of present and past supervisors with knowledge of Kumagai in doing his background check and well as his current and past assignments and training. Sgt Chastain concluded that he had was a trustworthy and reliable person. | Disputed.  Sgt. Chastain had unanswered questions about Kumagai's apparent family involvement in the marijuana trade, but he decided to trust him anyway.  Sgt. Chastain Dep., 11:3-19:1. |
| 76. Only after the search warrant did he become aware of a federal investigation that concerned him regarding his financial connection with certain known drug dealers. | Disputed. The defense refused to disclose all of the pertinent facts, and therefore cannot use its privilege assertion as both a sword and a shield, as argued in the accompanying opposition. |
| **TOMAS CANTU** | |
| 77. Detective Cantu has been with the Fresno Police Department for sixteen years. | Undisputed. |
| 78. They were investigating illegal coin pushers, illegal gambling devices and the investigation led them to Micah Jessop. | Undisputed. |
| 79. Prior to the Ashjian/Jessop investigation, Detective Cantu was on the vice unit for approximately a year and a half. | Undisputed. |
| 80. Detective Cantu became aware of Mr. Jessop and Mr. | Undisputed. |

| | |
|---|---|
| Ashjian through Detective Kumagai. | |
| 81. Detective Cantu was assigned the "Simpson" residence. | Undisputed. |
| 82. He was the Detective with the job of scribe. | Disputed.  Chastain recalls there being photographs taken of the items seized at the Simpson location, but they have inexplicably vanished.  Photos taken of Simpson search (the location where all the money, except Jessop's collectible coins and currency, is missing) inexplicably cannot be located. Chastain Dep., 25:25-27:1; 31:18-32:3; Dodd Dep., 22:2-7. Defendant Cantu, ex-Det. Kumagai's partner, was supposed to be doing the photographing. Dodd Dep., 17:20-23; 19:7-18. The lead case agent, in this case ex-Det. Kumagai, typically decides whether to take photographs.  Zarasua Dep., 15:24-16:2 |
| 83. Detective Cantu was to be notified of the evidence, collect it, document it, and keep possession of it until it's turned over to the person who's going to book it and transport it. | Undisputed. |
| 84. He did not count the money but was present while it was being counted. | Undisputed. |
| 85. The scribe takes the money, is present when the money is being counted, or counts the money himself. He also makes sure that both officers present agree on what is being counted. | Disputed, as there is a huge discrepancy between what was reported seized and what was actually seized. Disputed.  $131,380 was the amount of currency seized during the execution of the search warrant and only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 |

| | |
|---|---|
| | However, only $37,014 was reported seized according to the seizure records and receipts. Kumagai Dep., 74:15-75:1. Not all of the money made it to the station, apparently. |
| 86. The money found stayed with Sergeant Chastain. | Disputed. Sergeant Chastain claimed that only $50,000 was seized. However, plaintiffs claim that $131,380 was seized. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. Only $37,014 was accounted for. Jessop Dep. Vol. 1, 203:15-25, 204:1. Kumagai Dep., 25:20-25; 26:25 Moreover, the money appears to have left Sgt. Chastai's possession, because Derik Kumagai was seen counting the money inside the residence by Plaintiff Jessop. Jessop Dep. Vol. 1, 105:20-25; 106:1-12. Det. Kumagai was alone in the bedroom with the collectible coins and currency, after which time they were never seen again. *See* Declaration of Kristine Jessop. In both instances, Kumagai was the last one seen with the missing items. |
| 87. Sergeant Chastain transported all the money back to the station. | Disputed. Plaintiffs claim that $131,380 was seized but Sergeant Chastain claims that only $50,000 was seized and transported back to the station. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. |
| 88. Detective Cantu is not aware of any theft of property | Disputed. Plaintiffs claim that $131,380 was seized. |

| | |
|---|---|
| and money found at the subject locations. | Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13; 205:15-25; 104:1: 135:13-25; 136:1-17. |
| **ROBERT REYNOLDS** | |
| 89. Detective Kumagai was the lead investigator in the case. | Undisputed. |
| 90. The briefing sheet had assignments, locations and teams. | Undisputed. |
| 91. Detective Reynolds was assigned to the Stuart residence. | Undisputed. |
| 92. Detective Reynolds did not contact Detective Kumagai after he located coins wrapped in the binders. | Undisputed. |
| 93. Detective Reynolds contacted Sergeant Chastain after he found coins wrapped in binders. | Undisputed. |
| 94. The officers discussed if the coins should be included as part of the search warrant. | Undisputed. |
| 95. The officers decided that the coins were collectibles and not coins that would be coming out of a coin pusher machine. | Undisputed. |
| 96. Detective Reynolds advised Detective Arnellanes that they were not going to take coins and Detective Arnellanes took the collectible coins off the inventory sheet. | Undisputed. |
| 97. The coins were then placed in a suitcase in the master bedroom outside the closet. | Disputed. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency |

26

| | |
|---|---|
| | and they were never seen again. *See* Declaration of Kristine Jessop. |
| 98. The collectible coins were in the suitcase when Detective Reynolds left the premises. | Disputed. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| 99. Detective Reynolds saw Detective Arnellanes cross off the coins on the inventory sheet. | Undisputed. |
| 100. The coins had been found inside a gray tote. | Undisputed. |
| 101. The coins were not placed back in the gray tote. They were placed in the suitcase. | Disputed. At Kumagai's instructions, the collectible coins an dcurrency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| **Annette Arellanes** | |
| 102. Detective Arellanes has been with Fresno Police Department for Twenty-one Years. | Undisputed. |

| | |
|---|---|
| 103. She was part of the team of officers assigned to the "Stuart" residence. | Undisputed. |
| 104. A majority of the money was found in the master bedroom closet. | Undisputed. |
| 105. She observed collectible coins but they were not seized. | Disputed.<br>Plaintiff Jessop discovered the collectible coins missing when he arrived home after the officer had left the location. Jessop Dep. Vol. 1, 135:13-25; 136:1-17 |
| 106. Originally Detective Arellanes was going to seize the collectible coins and wrote them down on the property form. She called the case agent and Sergeant Chastain and they decided not to collect the collectible coins and therefore they were crossed off. | Undisputed that they crossed off the coins from the property form. Disputed that they were not seized or taken by one of the officers.<br>Jessop Dep. Vol. 1, 135:13-25; 136:1-17 |
| 107. When Detective Kumagai arrived at the location, the officers were done with their search and the property they were taking was located in the living room. | Disputed. At Kumagai's instructions, the collectible coins and currency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| **KEN DODD** | |
| 108. Detective Dodd has been with Fresno Police Department for over 20 years. | Undisputed. |
| 109. He was part of the Financial Crimes Unit and was contacted by Detective Kumagai about the investigation of Mr. Jessop and Mr. Ashjian. | Undisputed. |

| | |
|---|---|
| 110. He was assigned to the "Simpson" residence. | Undisputed. |
| 111. Detective Dodd found money in the Dodge car that pulled up. | Undisputed. |
| 112. He counted the money that he found in the car. | Undisputed. |
| 113. He had Detective Cantu on his left and Sergeant Chastain on my right side when counting the money. | Undisputed. |
| 114. After the search and counting of monies he left. | Undisputed. |
| **MICAH JESSOP** | |
| 115. He claims that he had collectible coins, that were in a rubber tub like container, before the search. | Undisputed. |
| 116. He has not had the coins appraised. | Undisputed. |
| 117. He did search a suit case after the search and found some collectible items. | Undisputed. |
| 118. He is claiming some of the collectible coins were in the suitcase but not all of the collectible coins. | Undisputed. |
| 119. He also received back from the police department silver coins. | Undisputed. |
| 120. a bag with coins in it and a container with a coin in it. | Undisputed. |
| 121. and was returned a sleeve of silver dollars. | Undisputed. |
| 122. Ten boxes were eventually received back from the police department where some of the collectible coins were found. | Undisputed. |
| 123. After the search, a meeting with Jessop, Ashjian, their attorney's and members of the police department occurred. | Undisputed. |
| 124. Jessop did mention during the meeting that cash and coins were missing. | Undisputed. |
| 125. He asked Detective Kumagai | Undisputed. |

| | |
|---|---|
| "that there was a little tub that had all of my coins and gold certificates in it and uncirculated bills and I asked them if they had taken it and they said no." | |
| 126. Detective Kumagai informed him that the collectibles were all placed in a suitcase on the floor in the master bedroom. | Disputed. At Kumagai's instructions, the collectible coins an dcurrency were left at the Stuart address and were still there when Kumagai got there. Arrellanes Dep., 15:5-28. Kumagai, Chastain and Cantu were the last ones to leave the Stuart location. Reynolds Dep., 25:9-20. However, Kumagai was the last officer to be alone with the collectible coins and currency and they were never seen again. *See* Declaration of Kristine Jessop. |
| 127. His attorney made a request to see the property that was seized. | Undisputed. |
| 128. He did go to the department to view the property that was on a cart. | Undisputed. |
| 129. He did see "paper currency, some coins, quarters, rolls of quarters. Inside the bag there were uncirculated bills." | Undisputed. |
| 130. He said this was not all the money. | Undisputed. |
| 131. Detective Kumagai "shrugged his shoulders and said he didn't know what to tell me." | Undisputed. |
| 132. "He [detective Kumagai] said that we could file a claim with the city". | Undisputed. |
| 133. Jessop did enter into a contract with the City to be a confidential informant and that he would be personally forfeiting $50,000. | Disputed. Ashjian and Jessop understand that a total of $50,000, not $50,000 each, was forfeited pursuant to the agreement. Ashjian Dep., |

| | |
|---|---|
| | 114:2-6; 151:6-15; Jessop Dep., Vol. II, 28:24-29:2. |
| 134. After Kumagai's arrest , he did speak with the DEA and FBI about the search warrant. | Undisputed. |
| 135. Jessop did not blame Detective Kumagai or state that he thought Kumagai personally took money and collectible coins. He stated, "I did say the Fresno Police Department" did. | Disputed. Ashjian and Jessop understand that a total of $50,000, not $50,000 each, was forfeited pursuant to the agreement. Ashjian Dep., 114:2-6; 151:6-15; Jessop Dep., Vol. II, 28:24-29:2. |
| 136. He did not see nor know of a specific officer that took money and collectibles. He only concludes that, "I don't know what has happened behind closed doors" | Undisputed. |
| 137. He did file a claim or claims with the City of Fresno. | Undisputed. |
| **BRITTAN ASHJIAN** | |
| 138. When the search warrants were served he was not handcuffed nor placed under arrest. | Undisputed. |
| 139. There had been concern that criminal charges might be filed against him. | Undisputed. |
| 140. Afterwards, he entered into a contract with the City of Fresno. | Undisputed. |
| 141. Prior to entering into the agreement he received legal advice and agreed to the terms of the contract. | Undisputed. |
| 142. He agreed that by entering into the contract he was to allow $50,000 to be forfeited to the City. | Disputed. Ashjian and Jessop understand that a total of $50,000, not $50,000 each, was forfeited pursuant to the agreement. Ashjian Dep., 114:2-6; 151:6-15; Jessop Dep., Vol. II, 28:24-29:2. |
| 143. After the search, property was returned back but a computer had been accidentally broken. | Undisputed. |
| 144. He did file a tort claim with the City for the broken | Undisputed. |

31

| | |
|---|---|
| computer and was paid for the damage. | |
| 145. He knew he had cash in his vehicle the day of the search but did not know how much. | Disputed. The Plaintiffs discovered at a later date how much cash they had in their vehicles. Jessop Dep. Vol. 1, 101:1-25; 103:22-25; 104:1-13. |
| 146. His house was searched. $400 dollars in cash was collected in the search and was returned back to him. | Undisputed. |

WHEREFORE, the defendants' summary judgment motion should be

denied, and this matter should proceed to trial as scheduled.


Dated:  January 3, 2017          /s/ Darrell J. York
                                 Darrell J. York
                                 Attorney for Plaintiffs