Peter J. Ferguson, SBN 108297
Allen Christiansen, SBN 263651
**FERGUSON, PRAET & SHERMAN**
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 telephone
(714) 953-1143 facsimile
Peterferg@aol.com

Attorneys for Defendants City of Fresno, Tomas Cantu and Curt Chastain

Kevin M. Osterberg, SBN138760
Kosterberg@hbblaw.com
**HAIGHT, BROWN & BONESTEEL, LLP**
3750 University Ave., Suite 560
Riverside, CA 92501
(951) 341-8300; Fax (951) 341-8309

Attorneys for Defendant Derik Kumagai

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAH JESSOP and BRITTAN ASHJIAN, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF FRESNO, et al., <br><br> Defendants. | NO. 1:15-cv-00316 DAD-SAB <br><br> [Honorable Dale A. Drozd] <br><br> **DEFENDANTS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date: January 17, 2016 <br> Time: 9:30 am <br> Courtroom: 5, 7th Floor |

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. PLAINTIFFS' OPPOSITION IS VOID OF ANY MATERIAL FACT TO PRECLUDE SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Undisputed Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1. The Simpson Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2. The Stuart Location. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        3. The Pinedale Location. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. Plaintiffs Undisputed Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1. Brittan Ashjian. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2. The Detectives Did Not Steal Property or Money. . . . . . . . . . . 6

II. PLAINTIFFS HAVE ABANDONED THEIR SECOND CAUSE OF ACTION FOR PROCEDURAL DUE PROCESS AND THIS CAUSE OF ACTION MUST BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS CLAIM OF AN UNLAWFUL SEARCH AND SEIZURE AS THERE IS NO MATERIAL ISSUE OF FACT THAT ANY MONEY/ITEMS WERE TAKEN BY THEFT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM FAILS AND JUDGMENT SHOULD BE ENTERED. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V. THERE IS NO *MONELL* VIOLATION AND THE CITY IS ENTITLED TO JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. Plaintiffs' Cannot Rely on Employee Misconduct As A Basis For *Monell* Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B. A Single Alleged Act Is Not Sufficient To Establish *Monell* Liability.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI. THE DETECTIVES ARE ENTITLED TO QUALIFIED IMMUNITY. . . 15

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                           **Page**

*Anderson v. Liberty Lobby, Inc.*, (1986)
477 U.S. 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Barnett v. Centoni*, (9th Cir. 1993)
31 F.3d 813. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, (1997)
520 U.S. 397. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blough v. Holland Realty, Inc.*, (9th Cir. 2009)
574 F.3d 1084. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, (9th Cir. 1987)
818 F.2d 1466. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Camara* v. *Municipal Court of City and County of San Francisco*, (1967)
387 U.S. 523. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chew v. Gates*, (9th Cir. 1994)
27 F.3d 1432. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chuman v. Wright*, (9th Cir. 1996)
76 F.3d 292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Los Angeles* v. *Heller,* (1986)
475 U.S. 796, 799. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Oklahoma City v. Tuttle*; (1985)
471 U.S. 80, 824, 105 S. Ct. 2487, 85 L. Ed. 2d 791. . . . . . . . . . . . . . . . . . . . . 15

*Davis v Mason county*, (9th Cir. 1991)
927 f2d 1473, 1480. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis v. City of Ellensburg*, (9th Cir. 1989)
869 F.2d 1230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*Farmer v. Brennan*, (1994)
511 U.S. 825. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*First Nat'l Bank v. Cities Serv. Co.*, (1968)
391 U.S. 253. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*FTC v. Publ'g Clearing House*, (9th Cir. 1997)
104 F.3d 1168 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Getz v. Boeing Co.*, (9th Cir. 2011)
654 F.3d 852. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jones v. Williams,* (9th Cir. 2002)
297 F.3d 930, 934. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lewis v. County of Sacramento,* (1998)
523 U.S. 833, 842, 118 S.Ct. 1708, 1714. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mabe v. San Bernardino Cnty.,* (9th Cir. 2001)
237 F. 3d 1101, 1110-11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Monell v. Department of Social Services of New York,* (1978)
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611. . . . . . . . . . . . . . . . 2, 11, 12, 14

*Nelson v. Pima Cmty. Coll.,* (9th Cir. 1996)
83 F.3d 1075, 1081-82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Orr v. Bank of Am.,* (9th Cir. 2002)
285 F.3d 764, 773. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parratt v Taylor,* (1981)
451 U.S. 527. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

*Ricci v. DeStefano,* (2009)
557 U.S. 557. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sanders v. Brown,* (9th Cir. 2007)
504 F.3d 903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scott v. Harris,* (2007)
550 U.S. 372. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sinclair v. City of Grandview,* (E.D. Wash., April 11, 2013)
973 F. Supp. 2d 1234.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Skinner* v. *Railway Labor Executives' Assn.,* (1989)
489 U.S. 602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* (9th Cir. 1987)
809 F.2d 626. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Tatum v. City and County of San Francisco,* (9th Cir. 2006)
441 F.3d 1090. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United states v. James Daniel Good Real Property,* (1993)
510 U.S. 43. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Leon,* (1984)
468 U.S. 897. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes**

*Fed. R. Civ. P.* Rule 56(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# INTRODUCTION

Plaintiffs have simply done what the Federal Rules of Civil Procedure state you cannot do in opposing a motion for Summary Judgment. Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987).

Here though, a Material Issue of Undisputed Fact is:

> "He (Jessop) did not see nor know of a specific officer that took money and collectibles. He only concludes that, 'I don't know what has happened behind closed doors.'" (Undisputed Fact, 136).

In a nutshell, plaintiffs "claim" they had more money/items than they had after the execution of a search warrant is simply a mere conclusion. First, there is **no** evidence that in fact, the plaintiffs had in their possession the money claimed. Second, there is **no** evidence that these defendants stole the items.

Further, plaintiffs' claims are still a bit odd. They do dismiss the second cause of action because they failed to pursue their administrative remedy in state court. (See *Parratt v Taylor,* 451 U.S. 527 (1981)). Here's the problem, there is no evidence the property was stolen, or misplaced or some form of negligent act, caused the alleged money to disappear. If the money had disappeared because of the latter form of loss (a negligent act), then the case simply must be dismissed. Perhaps this is why they dismissed the claim, but to survive, plaintiffs' must prove, or present evidence that the money was "stolen." They cannot and they admit that fact.

The declaration of Kristine Jessop simply does not create a material fact to

this point. She only provides a conclusion that the "coin collection & the gold certificates were in our home prior to the officers conducting the search and they were missing after they had left." (K. Jessop Decl., ¶6). There are no details, only speculation and conclusions. There is **no** evidence of when she was aware of the items and the amount. This is because there never was any accounting prior to the search. Moreover, there is **no** evidence that detectives Kumagai, Chastain or Cantu were aware of the alleged theft of money. [1]

Further, the assertion, or lack thereof precludes a substantive due process violation. There is **no** evidence that "shocks the conscience." Although the defendants deny that plaintiffs suffered any loss, the mere missing of money or items does not raise to the level of Substantive Due Process violation.

The lack of any unconstitutional departmental policy that "caused" the alleged violation precludes any claim of *Monell* liability. The fact that detective Kumagai, after the incident, was convicted of a felony is not evidence of an unconstitutional policy. In fact, one violation by itself does not create a *Monell* violation. See *Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989).

In the end, and as explained more fully below, the defendants are entitled to judgment in their favor.

---

[1] A separate filed objection to the Declaration sets forth numerous deficiencies. Plaintiffs' attempt to use the Declaration of Kristine Jessop, as support for their new theory (set forth for the first time in this case in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment) that it was Defendant Kumagai who stole "missing money." Opp. page 7, lines 24-26. Plaintiffs also attempt to use the Jessop Declaration to create a genuine dispute of material fact as to whether or not Defendant Kumagai stole coins and currency from the Jessop residence on Stuart Avenue. However, Ms. Jessop's Declaration contains nothing more than irrelevant, conclusory, speculative, and sometimes contradictory statements which neither support Plaintiffs new theory that Defendant Kumagai stole "the missing money", nor create a genuine dispute of material fact as to whether or not Defendant Kumagai, or any officer, stole coins and currency from the Jessop residence on Stuart Avenue, or from any location.

2

## I. PLAINTIFFS' OPPOSITION IS VOID OF ANY MATERIAL FACT TO PRECLUDE SUMMARY JUDGMENT

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)(quoting in part *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

More importantly, the party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). *See, e.g., Sanders v. Brown*, 504 F.3d 903, 910(9th Cir. 2007) ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss."); *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.")

### A. The Undisputed Facts

#### 1. The Simpson Location

Here, the facts are not disputed that an extensive investigation of the plaintiffs for possession and operation of illegal gambling machines and money laundering took place. (UF, 2, 3,4,5,6). A search warrant was signed and issued by the Superior Court (UF,8). Then during the search at the Simpson Street address, detective Kumagai did not physically search the premises, or the vehicles. (UF 11). Plaintiff does claim that he saw Detective Kumagai and others "count" money inside the residence. But this does not refute let alone create a material fact that Detective Kumagai took any money. For example, there is no evidence that anyone, let alone detective Kumagai, placed money in his pocket or with held a bag of money. In fact, detective Kumagai claims he was with other detectives at the time, to assure credibility of the count.

It is also undisputed that Detective Chastain was aware of the investigation including the fact that the plaintiffs were responsible for the distribution of the gambling machines, and that possible money laundering of the proceeds were taking place. (UF, 55, 56, 57). And at the search on Simpson, detective Chastain was aware that money was found in the kitchen area and in a Dodge car. Further, that he was present when money was found in the Dodge car and counted. (UF, 59, 60). His role was to stand there and see what kind of amounts were found and to ensure that there was a witness to it and see that it was being done correctly. (UF, 61).

Further, Detective Cantu was assigned to the Simpson location. That he was to be notified of the evidence, collect it, document it, and was to keep possession of it until it's turned over to the person who's going to book it and transport it. Importantly, it is undisputed that he was present while the money was being counted. (UF, 81, 83, 84).

Detective Dodd was part of the Financial Crimes Unit and was assigned to

the Simpson residence. (UF, 109).  He is not a defendant in this action.  Most importantly, he found money in the Dodge car and that he counted the money found in the car.  That Detective Cantu and Chastain were on his sides when counting the money. (UF, 110, 111, 112, 113).  There is no evidence that his finding of money and counting of money was not accurate.

### 2. **The Stuart Location**

Detective Reynolds was assigned to the Stuart location.  He is not a defendant in this action.  He did located coins in binders.  He contacted Detective Chastain about the coins and decided not to take the coins as they were not coming out of a "coin pusher."  He discussed this with Detective Arellanes and had her take the "collectible coins" off the inventory sheet. The coins were then placed in a suitcase in the master bedroom outside the closet. (UF, 97).  Although plaintiffs attempt to refute this fact, they really do not.  They simply admit that the coins and currency were left at the residence and that they were there when detective Kumagai arrived.  The support for the latter fact, however, is lacking or missing.  Regardless the Undisputed fact is that the coins and currency were placed in a suitcase.

Detective Arellanes was assigned to the Stuart location.  She is not a defendant in this action.  Most the money was found in the master bedroom closet.  Originally, she was going to seize the collectible coins and wrote it down on the property form.  She called detective Chastain and they decided not to collect collectible coins and which were then crossed off of the sheet. (UF, 103, 104, 106).

Detectives Chastain, Cantu and Kumgai did go to this location after the Simpson search was completed.  They did not conduct a search for money at the house.

//
//

5

### 3. The Pinedale Location

There are no facts that money or items were missing from the Pinedale location.

### B. Plaintiffs Undisputed Facts

Mr. Jessop admits that he did not have the coins appraised. He did search a suit case after the search and found some of the collectible coins. That he did receive back from the police department silver coins and was returned a sleeve of silver dollars. In fact, he received ten boxes back, including some of the collectible coins. (UF, 115 – 122). That he did ask detective Kumagai if the coins and certificates were taken and that Kumagai said "no." That he was informed that the collectibles were placed in a suitcase on the floor of the master bedroom. (UF, 126). Again, although plaintiffs list this as disputed, it is not. Plaintiffs' "evidence" admits that the items were there and that they were never seen again, citing Kristine Jessop declaration, objected to.[2] Regardless, there is no evidence these defendant officers took any money intentionally to steal.

Jessop also did see the property that was seized at the department. Jessop did see "paper currency, some coins, quarters, rolls of quarters. Inside the bag there were uncirculated bills." (UF,128-129). Jessop was also told he could file a claim with the City. (UF, 132).

Most importantly are Undisputed Facts 135 and 136. UF 135 states: **"Jessop did not blame Detective Kumagai or state that he thought Kumagai personally took money and collectible coins. He states, 'I did say the Fresno Police Department'** did." (Although it is Plaintiffs now attempt to dispute this

---

[2]However, two (2) facts that Ms. Jessop's Declaration does confirm is that she has no knowledge of what items were removed from Jessops' residence (Jessop Dec. Para. 3, lines 17-19); and she has no knowledge if the officers ("they") took a "bin containing a gold coin and gold certificate collection" from the residence (Jessop Dec. Para. 6, lines 17-20).

6

fact, the evidence cited has nothing to do with the factual evidence). Then, UF 136 states: **"He did not see nor know of a specific officer that took money and collectibles. He only concludes that, 'I don't know what has happened behind closed doors.'"**

### 1. Brittan Ashjian

He admits that there was concern that criminal charges might be filed against him. That he entered into a contract with City, after conferring with Counsel, and agreed he would be forfeiting $50,000. (UF, 139-142). That when property was returned back from the Department, he became aware that a computer had been broken. He filed a claim with the City and the City did pay on that claim. (UF, 143-144).

It is also undisputed that $400 was collected at his house but that it was later returned back to him. (UF, 146). Ashjian also claims he had cash in his car but does not know how much. (UF, 145), although this is stated as disputed, it is not. The dispute refers to Mr. Jessop, not Mr. Ashjian's car. Moreover, the Evidence Receipt List, does not show any money or item taken from any other vehicle other than Jessop's. (See Kumagai Declaration, Exhibit B. (Docket #52-2).

### 2. The Detectives Did Not Steal Property or Money

Each Defendant Detective declares that they did not unlawfully take nor are they aware of any theft of property including money found at the subject locations. (See Chastain Declaration, para. 10, Docket 51-3; Cantu Declaration, para, 6, Docket 51-4; Kumagai Declaration, par a. 25 and 26, Docket 52, page 7).

## II. PLAINTIFFS HAVE ABANDONED THEIR SECOND CAUSE OF ACTION FOR PROCEDURAL DUE PROCESS AND THIS CAUSE OF ACTION MUST BE DISMISSED

Plaintiffs "[r]ecognizing this Circuit's holdings from *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1993), and related decisions, **the plaintiffs abandon their procedural due process claim.**" (Opposition, page 3, footnote 1).(Emphasis

added). Interesting, the dismissal then must also foreclose all allegations of "accidental" or "misplacement" or "negligence" somehow caused the money and items to be lost. If they do, that is a Procedural Due Process issue, and that now is abandoned. See *Parratt v Taylor,* 451 U.S. 529 (1981). For the reasons stated, judgment for all Defendants on this issue should be ordered.

### III. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS CLAIM OF AN UNLAWFUL SEARCH AND SEIZURE AS THERE IS NO MATERIAL ISSUE OF FACT THAT ANY MONEY/ITEMS WERE TAKEN BY THEFT

Plaintiffs do not dispute that an investigation into their illegal activities occurred. In fact they admit they were dealing with illegal gambling machines and the proceeds thereto were changed to cash and possibly commingling the proceeds from the ATM business. (UF 6). That the investigation lead to the issuance of a search warrant. The plaintiffs do not dispute, nor could they, the validity of the search warrant. It was reviewed and signed by Judge Ikeda. (UF, 6). Thus, the legality of the search was legal and in accordance with the Fourth Amendment. "Where the alleged *Fourth Amendment* violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" *United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct.3405(1984). Thus, there is no Fourth Amendment Violation arising out of the investigation or the issuance of the warrant. Indeed, the police had a right to search the premises' and seize that property claimed to be pertinent to the investigation of criminal activity.

Here, the police did search and seize property. Exhibit A to the declaration of Kumagai is a copy of the search warrant and supporting affidavit. Exhibits C, D and E are the Search Warrant Evidence and Receipt Lists for all three locations. The money and items seized is listed. These exhibits are the official lists of what

1  was taken. Nowhere does it list the amounts of money plaintiffs now claim. The
2  warrant and the list of property taken was conducted in a reasonable manner.
3       Importantly, there is only an assertion that money is missing allegedly at the
4  hands of Defendants. Be that as it may, this does not equate to an inference of
5  theft. The three remaining detectives deny any theft or knowledge of theft of
6  property. And the Plaintiffs cannot lump the three into the claim of another. See
7  *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1247 (*E.D. Wash.,* April 11,
8  2013) ("In order to assert a claim against an officer under § 1983, a plaintiff must
9  show that the officer personally participated in the alleged deprivation of
10 plaintiff's rights. See *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002). Put
11 differently, an officer may not be held liable because of his membership in a group
12 without a showing of individual participation in the alleged unlawful conduct.
13 *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996). 'Integral participation' in
14 the alleged deprivation of rights must be established on an individual basis. *Id.* A
15 plaintiff is not allowed to 'lump all of the defendants [team members] together'
16 and must instead 'base each individual's liability on his own conduct.'").
17      Indeed, only after the arrest of detective Kumagai did they raise the issue of
18 missing money. A mere coincidence or a conniving plot by plaintiffs is an
19 interesting thought, but not relevant to this motion for summary judgment.
20 Regardless, there is no specific evidence any of the three detectives unlawfully
21 took property or money. Judgment as to all three is appropriate.

### IV. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM FAILS AND JUDGMENT SHOULD BE ENTERED

24      The Substantive Due Process Claim fails because it is to be annualized
25 under the Fourth Amendment and, regardless, there is no "shocking causing"
26 evidence.
27      Plaintiffs' cause of action refers to the Fourteenth Amendment as a basis for
28 bringing their claim. However, "[w]here a particular amendment provides an

explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Lewis v. County of Sacramento*, 523 U.S. 833, 842, 118 S.Ct. 1708, 1714 (1998) (internal quotations omitted).

Plaintiffs cite *United states v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993) for the proposition that some Amendments may be preempted by the guarantees of another. That's true, in *James* a 'taking' issue under the Fifth and Fourteenth Amendments was before the Court. But even the *James* Court recognized that in search and seizure cases, the Fourth Amendment wins out. ("It is true, of course, that the Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions.
See *Camara* v. *Municipal Court of City and County of San Francisco*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967) (holding that a warrant based on probable cause is required for administrative search of residences for safety inspections); *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (holding that federal regulations authorizing railroads to conduct blood and urine tests of certain employees, without a warrant and without reasonable suspicion, do not violate the Fourth Amendment prohibition against unreasonable searches and seizures.") Since the claim is one for unlawful theft, it must be analyzed under the Fourth Amendment. For these reasons the Fourteenth Amendment claim must be dismissed and Judgment for the Defendants should be issued

Assuming a 'shocks the conscience' standard, the evidence simply does not raise up to that level. There is no evidence the search or seizure warrant was conducted in an unlawful manner. It was lawful and the mere missing of money or items from that search based upon pure speculation and conclusion simply does

not suffice. Thus, Defendants are entitled to judgment in their favor.

## V. THERE IS NO *MONELL* VIOLATION AND THE CITY IS ENTITLED TO JUDGMENT [3]

In a bizarre fashion Plaintiffs claim that they were prevented discovery, that the motion does not address the issues of *Monell* claimed in the Complaint, and they quote page after page of parts of a deposition of Chastain. None of this is relevant. What Plaintiffs failed to do is bring a discovery motion if they were not satisfied. Nowhere though is there a declaration of why they did not seek a discovery motion, of what it would show, and how it would prove their claim.

*Fed. R. Civ. P.* 56 (d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion to deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." In seeking relief under Rule 56(d), Plaintiff bears the burden of specifically identifying relevant information along with the basis for believing that the information actually exists and must demonstrate both that the evidence sought actually exists and that it would prevent summary judgment. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quotation marks and citations omitted); *Getz v. Boeing Co.*, 654 F.3d 852, 867-68 (9th Cir. 2011); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006).

Moreover, they failed to assert material facts of what the policy is and how it caused a constitutional violation. In sum, the requisite elements of a § 1983 policy-based claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the

---

[3]Since there is no underlying violation, the *Monell* claim is not relevant and Defendants' are entitled to Judgement. See *City of Los Angeles* v. *Heller,* 475 U.S. 796, 799 (1986)

11

policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F. 3d 1101, 1110-11 (9th Cir. 2001).

Although Plaintiffs mention that the complaint sets forth their allegations of *Monell*, the Complaint is not evidence. Plaintiffs are required to bring into evidence material facts in opposition to refute the moving parties' motion. Here, the evidence not in dispute is that no theft of property existed. That the search warrant was valid. That the search was conducted in a lawful manner. That the Property Lists show the items seized. And that the property was returned. A mere allegation of theft is not enough. And in this regard, Plaintiffs fail to recognize that acts of employees does not create liability. *Respondeat Superior* simply does not apply in a *Monell* claim. *Davis v Mason county*, 927 f2d 1473, 1480 (9th Cir. 1991). Thus, the alleged actions of detective Kumagai (facts that are not proved) in taking money does not amount to a *Monell* violation.

### A. Plaintiffs' Cannot Rely on Employee Misconduct As A Basis For *Monell* Liability

Plaintiffs' claims against the City of Fresno fail under standards set forth by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under *§1983* on a *respondeat superior* theory." *Id.* at 691. Rather, in order to prevail on a *§1983* claim against a city, a plaintiff must prove that the constitutional injury was inflicted pursuant to city policy, regulation, custom, or usage. *Id.*; see also *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). City policy causes an injury where it is the moving force behind the constitutional violation, or where the city itself is the wrongdoer." *Chew*, 27 F.3d at 1444 (internal quotation marks and citations omitted).

1    Plaintiffs' have simply ignored their responsibility in presenting evidence
2 that an Unconstitutional Policy of the City caused the harm claimed.  There is no
3 evidence presented for that fact.  Again, not to be repetitive for repetitions sake,
4 but Plaintiffs presented no evidence of a City policy that caused harm to the
5 Plaintiffs.  A mere allegation of a hiring or training issue is not sufficient.

6    On this point, Plaintiffs cite at great length the parts of the deposition of
7 Chastain and conclude that he "was aware of troubling issues pertaining to ex-Det.
8 Kumagai's past, and that those issues remained unresolved during his tenure."
9 (Opp. To Motion for Summary Judgment, pg. 12).  On point, the following is not
10 evidence of an unconstitutional policy and, in fact, shows just the opposite.  That
11 is, Detective Chastain did pursue a background review of Detective Kumagai.  He
12 inquired of past supervisors and only found **one** possible issue.  It was investigated
13 and he even confronted Kumagai about a possible marijuana issue.  It did not
14 relate to Kumagai, but rather to his wife's brother-in-law.  And there was no
15 information concerning theft of money.  The key fact is ignored by Plaintiffs.

- That Chastain makes a determination of trustworthiness. (Opp. 13: 6-9) And he ascertained whether Kumagai was.
- That he learned that there may potentially have been involvement in a marijuana business or had known someone that was. (Opp. 13: 15-19
- That he spoke with a detective in the Vice Unit at the time, spoke with ex supervisor where the information came from and were "able to confirm or deny the relationship with this tip that came up". (Opp. 14: 1-3)
- He spoke with his current supervisors, the commander, and looked at his job performance in the last several years.  This also included investigators, sergeants, retired officers who had direct oversight of [Kumagai] at that time. (Opp. 14: 8-12)
- That he sat down with Kumagai about the 'information' and was

assured "his wife's brother-in-law was one" involved. (Opp. 15:3-6)

- That he reviewed the recommendations of his current supervisors and commanders, and was then selected. (Opp. 15: 9-11)

Importantly, the search took place on September 10, 2013. Only after the search [March 2014] did it become known that there was an investigation into his financial connection with certain known drug dealers. (Opp. 16: 12-15) And that investigation lead to Kumagai to terminate his employment with the City. This shows, that there was an investigation of Kumagai prior to his coming into the Vice Unit. It was extensive and showed no information targeting him for actual misconduct. An allegation about his wife's brother-in-law's involvement with marijuana is just not a sufficient basis to claim a constitutional connection to any policy here. There is no evidence that he was involved in theft of monies as a police officer. See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that this omission would likely result in a constitutional violation." *Farmer*, 511 U.S. 841. "A municipality may not be held liable under [42 U.S.C. § 1983] solely because it employs a tortfeasor." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (referencing *Monell*, 436 U.S. at 689-92). Instead, a plaintiff seeking to establish municipal liability under § 1983 must prove that his or her injury was the result of a municipal policy or custom. Id. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403-04. There is no showing that Chastain is a policy maker and no showing of what the policy is and how it allegedly harmed the plaintiffs. Here, there simply is no showing the City was aware of Kumagai's after the fact activity. The City is entitled to judgment.

### B. A Single Alleged Act Is Not Sufficient To Establish *Monell* Liability

Further, more proof than the single incident alleged is required to establish *Monell* liability. See *Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989); *City of Oklahoma City v. Tuttle*; 471 U.S. 80, 824, 105 S. Ct. 2487, 85 L. Ed. 2d 791 (1985).

### VI. THE DETECTIVES ARE ENTITLED TO QUALIFIED IMMUNITY

The defendant detectives are entitled to qualified immunity as there are facts they participated in nor had knowledge of any unconstitutional violation.

### VII. CONCLUSION

For the reasons stated in the primary brief, the evidence presented and this reply brief, judgement for all defendants on all claims should be entered.

Respectfully submitted,

DATED: January 10, 2017      FERGUSON, PRAET & SHERMAN, APC

/s/ Peter J. Ferguson
PETER J. FERGUSON
ALLEN CHRISTIANSEN
Attorneys for Defendant Defendants City of Fresno, Tomas Cantu and Curt Chastain

DATED: January 10, 2017      HAIGHT, BROWN & BONESTEEL, LLP

/s/ Kevin M. Osterberg
Kevin M. Osterberg
Attorneys for Defendant Derik Kumagai

| | |
|---|---|
| 1 | PROOF OF SERVICE |
| 2 | |
| 3 | STATE OF CALIFORNIA, COUNTY OF ORANGE |

I, Coleen Ludvigson, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action. My business address is 1631 East 18th Street, Santa Ana, California 92705-7101.

On January 10, 2017, I served the foregoing **DEFENDANTS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on the interested parties in this action:

Law Offices of York & Garvey
Darrell J. York, Esq.
137 N. Larchmont Blvd., #506
Los Angeles, CA 90004
Attorneys for Plaintiffs

Law Office of Kevin G. Little
Kevin G. Little, Esq.
Post Office Box 8656
Fresno, CA 93747
Attorneys for Plaintiffs

Haight, Brown & Bonesteel, LLP
Kevin M. Osterberg, Esq.
3750 University Ave., Suite 560
Riverside, CA 92501
Attorneys for Defendant Derik Kumagai

\_\_\_\_ (By Mail)   I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

XXX (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

XXX (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 10, 2017, at Santa Ana, California.

/s/ Coleen Ludvigson
Coleen Ludvigson