UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAH JESSOP, et al., | No. 1:15-cv-00316-DAD-SAB |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CITY OF FRESNO, et al., | (Doc. No. 51.) |
| Defendants. | |

This action came before the court on January 19, 2017, for hearing of defendants' motion for summary judgment. (Doc. No. 51.) Attorney Kevin Little appeared telephonically on behalf of plaintiffs Micah Jessop and Brittan Ashjian. Attorney Peter Ferguson appeared telephonically on behalf of defendants the City of Fresno, Curt Chastain, and Tomas Cantu. Attorney Kevin Osterberg appeared telephonically on behalf of defendant Derik Kumagai. Oral argument was heard and the motion was taken under submission. For the reasons stated below, defendants' motion for summary judgment will be granted.

**FACTUAL BACKGROUND**

On February 26, 2015, plaintiffs Micah Jessop and Brittan Ashjian commenced this action by filing their complaint, naming as defendants the City of Fresno and City of Fresno police officers Curt Chastain, Derik Kumagai, Tomas Cantu, Ken Dodd, Bob Reynolds, Paul Zarausa, Anette Arellanes, David Garza, Curtis Bunch, Robert Fry, and Does 1–10. (Doc. No. 1.) On

December 8, 2016, pursuant to stipulation, the court dismissed City of Fresno Police Officers Ken Dodd, David Garza, Bob Reynolds, Paul Zarausa, Annette Arellanes, Curtis Bunch, and Robert Fry, as defendants from this action. (Doc. Nos. 49–50.) Accordingly, the action now proceeds only against defendant police officers Derik Kumagai, Tomas Cantu, and Curt Chastain ("defendant Officers"), and defendant City of Fresno. (*Id.*)

Plaintiffs assert four claims under 42 U.S.C. § 1983 based on alleged constitutional violations by defendants. (Doc. No. 1 at 7, ¶ 23.) As to the defendant Officers, plaintiffs allege: (i) a Fourth Amendment claim for illegal seizure of property; (ii) a Fourteenth Amendment procedural due process claim; and (iii) a Fourteenth Amendment substantive due process claim. (*Id.* at 8–11.) As to the defendant City of Fresno, plaintiffs allege municipal liability based on unconstitutional customs and policies. (*Id.* at 11–14.) Plaintiffs seek the award of compensatory damages, punitive damages, and attorneys' fees and costs. (*Id.* at 14.)

The following facts are undisputed by the parties on summary judgment. Plaintiffs owned and operated Automated Teller Machines ("ATMs") and illegal "Coin Pusher" gambling machines in the Central Valley of California, and kept large sums of cash in their business and homes to restock their machines. (Doc. No. 58 at 4, 17, ¶¶ 6, 56.) The defendant Officers were employed by defendant City of Fresno and at all relevant times were assigned to the Fresno Police Department Vice Unit. (*Id.* at 2–5, ¶¶ 1, 4, 9.) During the relevant time, defendant Chastain served as a supervising sergeant with the Vice Unit. (*Id.*)

In February of 2013, defendant Officer Kumagai became aware of a possible "Coin Pusher" machine located in a Fresno liquor store, and opened an investigation into suspected illegal gambling. (*Id.* at 2–3, ¶¶ 3–4.) Defendant Officer Kumagai acted under the supervision of defendant Sergeant Chastain and with the assistance of other Vice Unit members, including defendant Officer Cantu. (*Id.*)

On September 9, 2013, defendant Officer Kumagai obtained a search warrant signed by a Fresno Superior Court Judge authorizing the search of plaintiffs' residences and business. (*Id.* at 4, ¶ 8.) The following day, the defendant Officers served and executed the search warrant on three locations as authorized by that warrant. (*Id.* at 5, ¶ 10.) The defendant Officers seized

evidence during the execution of the search warrant and created an Evidence and Receipt List recording the various items seized by the executing officers.[1]  (*Id.* at 6–8, ¶¶ 12–16.)

A few days after the execution of the search warrant, plaintiffs and their retained counsel met with defendant Officer Kumagai and a Fresno Deputy City Attorney to view the currency and other evidence seized pursuant to the warrant.  (*Id.* at 10, ¶ 20.)[2]  As noted, this civil rights action was filed by plaintiffs on February 26, 2015.

On December 16, 2016, defendants jointly filed the instant motion for summary judgment.  (Doc. No. 51.)  Plaintiffs filed their opposition on January 3, 2017.  (Doc. No. 57.)  On January 10, 2017, defendants filed their reply.  (Doc. No. 59.)  Defendants also filed objections to evidence offered by plaintiffs in support of their opposition.  (Doc. No. 60.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

/////

---

[1]  The parties dispute the amount of currency that was actually seized during the execution of the warrant, whether collectible coins were also seized; and whether the Evidence and Receipt List identified all of the evidence taken by law enforcement officers during the execution of the search warrant.  (Doc. No. 58 at 6–8, ¶¶ 12–16.)

[2]  The parties also dispute whether plaintiffs voiced objections at this meeting regarding the alleged discrepancies between the amount of money seized during the execution of the search warrant on September 10, 2013 and the amount held thereafter at the City Attorney's office and made available for viewing by plaintiffs and their attorneys.  (Doc. No. 58 at 10, 22, ¶¶ 20, 72.)

presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.) *See also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . . , is satisfied." *Id.* at 323.

If the moving party meets its burden, the burden then shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

4

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

*Matsushita*, 475 U.S. at 587 (citations omitted).

When evaluating the evidence to determine whether there is a genuine issue of fact, the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

## ANALYSIS

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to make out a valid claim under § 1983, a plaintiff must allege and eventually prove that: (i) the conduct complained of was committed by a person acting under color of state law; (ii) the conduct deprived a person of constitutional rights; and (iii) there is an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by plaintiff. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–695 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a

supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

In the pending motion, defendants argue they are entitled to summary judgment on all of plaintiffs' claims under § 1983. The court will analyze each of defendants' arguments in turn below.

**A.      Section 1983 Claim for Fourth Amendment Violations**

Defendants argue that they are entitled to summary judgment on plaintiffs' § 1983 Fourth Amendment claims against the defendant Officers based on qualified immunity grounds.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, ___U.S.___, ___, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (in turn quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003); *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001). When determining whether qualified immunity applies, the central questions for the court are: (i) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right; and (ii) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson*, 555 U.S. at 236 (holding that this two-part analysis is "often beneficial" but not mandatory).

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Mullenix*, 136 S. Ct. at 308. In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308-09 (quoting *al-Kidd*, 563

U.S. at 741); *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional") (quoting *Saucier*, 533 U.S. at 202). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742). This inquiry must be undertaken in light of the specific context of the particular case rather than as a broad, general proposition. *Id.*; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 201.

When law enforcement officers raise a qualified immunity defense, the plaintiffs bear the burden of proving the existence of a "clearly established" right at the time of the allegedly unlawful conduct. *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014); *see also Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). If this burden is met by plaintiffs, then defendants bear the burden of establishing that their actions were reasonable, even if they might have violated the plaintiffs' federally-protected rights. *See Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "[R]egardless of whether the constitutional violation occurred, the [defendants] should prevail if the right asserted by the plaintiff[s] was not 'clearly established' or the [defendants] could have reasonably believed that [their] particular conduct was lawful." *Romero*, 931 F.2d at 627; *see also Moran v. State of Washington,* 147 F.3d 839, 844 (9th Cir. 1998).

Here, defendants argue that qualified immunity precludes plaintiffs' § 1983 claims premised on alleged violations of the Fourth Amendment. (Doc. No. 51-1 at 20–23.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Under the Fourth Amendment, a seizure occurs if "there is some meaningful interference with an individual's possessory interests in [his or her] property," even when privacy rights are not implicated. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (internal citation and quotation omitted); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1028 (9th Cir. 2012), *cert denied* ___U.S.___, 133 S. Ct. 2855 (2013). The government's interference with an individual's

possessory interests in their property must be reasonable, and "it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.'" *Horton v. California*, 496 U.S. 128, 134 (1990) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also United States v. Payton,* 573 F.3d 859, 864 (9th Cir. 2009) (a search without explicit authorization which exceeds the scope of the warrant does not meet the Fourth Amendment standard of reasonableness); *Miale v. Tuolumne Cty. Sheriff's Dep't*, No. 1:06–cv–01483–AWI–YNP PC, 2009 WL 3073922, at *5 (E.D. Cal. Sept. 22, 2009).

In their motion for summary judgment, defendants argue that plaintiffs' § 1983 claims based upon alleged Fourth Amendment violations are barred by qualified immunity because the September 10, 2013 search of plaintiffs' residence was executed pursuant to a valid warrant and did not violate plaintiffs' Fourth Amendment rights. (Doc. No. 51-1 at 14–15.) In support of this argument, defendants have come forward with the following evidence on summary judgment: (i) the declaration of defendant Kumagai, in which he states that he sought and obtained a search warrant from a Fresno County Superior Court Judge before conducting the September 10, 2013 search, (Doc. No. 52 at 2–3, ¶¶ 4–6, 8); (ii) defendant Kumagai's deposition testimony in which he explained that plaintiff Jessop admitted during the search to owning and operating illegal gambling machines with plaintiff Ahijan, (Doc. No. 53-1 at 19–20); (iii) the search warrant identifying the locations and the items to be seized that the defendant Officers relied upon in conducting the search, as well as affidavit in support of the search warrant establishing probable cause for its issuance, (Doc. No. 52-1 at 2–24); and (iv) the property sheets/search warrant evidence and receipt list created by Fresno police officers during the execution of the search warrant that lists each item of property seized, the seizing officer, and the location from which the item was seized, (Doc. Nos. 52-3 at 2–3; 52-4 at 2–3; 52-5 at 2–4).

Plaintiffs argue that qualified immunity does not bar their § 1983 claims based on the Fourth Amendment violations they allege in their complaint, because disputed issues of material fact remain as to whether the defendant Officers, in fact, exceeded the scope of the warrant during their execution of the search warrant in violation of plaintiffs' rights under the Fourth

Amendment. (Doc. No. 57 at 11–13.) In opposing summary judgment on this ground, plaintiffs rely on two forms of evidence: (i) the deposition testimony of plaintiff Micah Jessop in which he testified that $131,380 in currency and collectible coins was seized by police officers from plaintiffs on September 10, 2013, rather than the $50,000 amount reported by defendants on the property sheets/search warrant evidence and receipt list, (Doc. No. 55 at 196); and (ii) the declaration of Kristine Jessop, the wife of plaintiff Micah Jessop, who states that there were collectible coins in the bedroom of her residence prior to the defendant Officers' execution of the search warrant that were missing after the officers' departure from the residence, (Doc. No. 57 at 30–31, ¶ 6).

  To the extent plaintiffs contend that the defendant Officers exceeded the scope of the warrant in executing the search thereby violating plaintiffs' rights under the Fourth Amendment, the court finds that argument to be unsupported by the evidence and unpersuasive. It is undisputed by the parties on summary judgment that the search warrant in question was issued by the reviewing state court judge based upon the judicial determination that the supporting affidavit established probable cause to believe plaintiffs were operating a business involving illegal gambling machines, and that evidence, specified in the warrant, of that crime would be found in the places authorized to be searched. That search warrant was valid on its face.

  Moreover, the undisputed evidence before the court on summary judgment establishes that the property seized by the defendant Officers was within the scope of the property described in the warrant as authorized for seizure. In this regard, the search warrant authorized the executing officers "[t]o seize all monies, negotiable instruments, securities, or things of value furnished or intended to be furnished by any person in connection to illegal gambling or money laundering that may be found on the premises, said items being subject to seizure and forfeiture," as well as "monies . . . derived from the sale and or control of said [gambling] machines." (Doc. No. 52-1 at 5-6.) In their complaint, plaintiffs allege that defendant Officers seized approximately a total of $131,380 from plaintiffs' business location, and another $20,000 in currency as well as rare coins valued at $125,000 from plaintiffs' residences. (Doc. No. 1 at 7, ¶ 24.) Simply put, on its face the warrant authorized the seizure of these "Monies, negotiable instruments . . . or things of

value."[3]  (Doc. No. 52-1 at 5) (emphasis added).  Based upon this probable cause showing, the search warrant thus authorized seizure of all money and valuables found at the locations to be searched.  *Cf. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 973 (9th Cir. 2005) (distinguishing between search warrants authorizing the seizure of "any" items and those authorizing seizure of "all" items, emphasizing the latter to be broad in scope).  The defendant Officers were entitled to rely on this language when searching plaintiffs' business and residences and determining what was to be seized pursuant to the warrant.  *See United States v. Marques*, 600 F.2d 742, 751 (9th Cir. 1979); *United States v. Western Titanium, Inc.*, No. 08–CR–4229–JLS, 2010 WL 3768174, at *1 (S.D. Cal. Sept. 22, 2010).

In their opposition to the pending motion for summary judgment, plaintiffs state in conclusory fashion that, "[u]nquestionably, the theft of over $100,000 and collectible coins/currency exceeded the legitimate scope of the search warrant."  (Doc. No. 57 at 11.) However, plaintiffs offer no evidence in support of this conclusory contention.  *Cf. City of San Jose*, 402 F.3d at 974 (observing that behavior "beyond that necessary to execute [a warrant] effectively" violates the Fourth Amendment) (internal citation omitted).  Accordingly, even assuming the truth of plaintiffs' allegations, the court finds that there is no genuine disputed issue of material fact as to whether defendant Officers exceeded the scope of the warrant during the search.  Based upon the undisputed facts defendants are entitled to judgment in their favor as to this aspect of plaintiffs' claim.

To the extent that plaintiffs allege defendant Officers engaged in the subsequent theft of property that had lawfully been seized pursuant to the warrant, the court concludes that such conduct does not violate any Fourth Amendment right that was clearly established at the time in

---

[3]  The affidavit and statement of probable cause supporting the warrant explained to the issuing judge that based upon the affiant's training and experience, he knew that persons engaged in these illegal activities possess, among other things, "U.S. currency and/or a 'Thing of Value,' as defined as any monies, coin, currency, check, chip, allowance, token, credit, merchandise, property or any representation of value used or intended to be used for the purpose of operating, demonstrating and/or sales of said [illegal gambling] machine" and that "money that is derived from the illegal devices is possibly being commingled with proceeds earned from the ATM business."  (Doc. No. 52-1 at 13.)

question.  Plaintiffs allege in their complaint and in their opposition to the pending motion that one or more of defendant Officers stole property that had been seized during the September 10, 2013 search.  The Ninth Circuit, however, has offered no direct guidance as to whether the Fourth Amendment protects against the subsequent theft of lawfully seized items, and the circuit courts that have addressed this issue appear to be divided.  *See United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982) (not directly analyzing this issue but finding that evidence seized pursuant to a warrant was properly admitted in evidence at trial, noting that "unnecessary delay" in returning property seized during a search pursuant to warrant "appears to be an unreasonable and therefore unconstitutional manner of executing the warrant"); *see also Springer v. Albin*, 398 Fed. Appx. 427, 434–35 (10th Cir. 2010) (identifying a circuit split on the question of whether a theft by federal agents of lawfully seized currency violated the Fourth Amendment, and concluding that qualified immunity precluded plaintiff's *Bivens* claims based upon such alleged conduct)[4]; *see generally Prison Legal News v. Lehman*, 397 F.3d 692, 701–02 (9th Cir. 2005) ("In determining whether . . . rights in this case were clearly established, and whether a reasonable person would have known his or her actions violated these rights, we may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent."); *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995) (explaining that, in determining whether an act is clearly established for qualified immunity purposes, courts should look to binding precedent as well as to the decisions of other circuits).[5]

/////

---

[4]  "[A] *Bivens* action is the federal analog to suits brought against state officials under . . . § 1983."  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

[5]  Federal Criminal Procedure Rule 41(g) requires the return of property lawfully seized under certain circumstances.  *See United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991) (noting that a criminal defendant is presumed to have the right to the return of his property once it is no longer needed as evidence and that the burden of proof is on the state to show "that it has a legitimate reason to retain the property" that is reasonable under all of the circumstances). However, the Ninth Circuit has also stated that analysis of a Rule 41(g) motion for return of property is distinct from the analysis under the Fourth Amendment.  *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172–73 (9th Cir. 2010) (emphasizing that Rule 41(g) and restrictions under the Fourth Amendment "serve fundamentally different purposes").

On the one hand, some courts have determined that a government officer's theft of lawfully seized property constitutes a Fourth Amendment violation. *See Mom's Inc. v. Willman*, 109 Fed. Appx. 629, 636–37 (4th Cir. 2004) (finding that defendant federal agents' theft of a watch would represent a Fourth Amendment violation); *Barker v. Norman*, 651 F.2d 1107, 1131 (5th Cir. 1981) (finding that a triable issue existed as to whether defendant police officer's retention of property lawfully seized from plaintiff's apartment violated the Fourth Amendment); *see also Collins v. Guerin*, No. 14–cv–00545–BAS (BLM), 2014 WL 7205669, at *6 n.2 (S.D. Cal. Dec. 17, 2014) (denying a motion to dismiss and concluding that plaintiff was not precluded from bringing a § 1983 Fourth Amendment claim challenging the defendant officers' alleged theft of jewels during the search of a home pursuant to warrant, because the theft "is more akin to cases involving destructive behavior during a search"); *Swales v. Township of Ravenna*, 989 F. Supp. 925, 940–41 (N.D. Ohio 1997) (holding that an initially reasonable seizure can become an unreasonable seizure that violates the Fourth Amendment when officers refuse to return seized property). These courts have reasoned that the protections of the Fourth Amendment extend beyond "the initial acquisition of possession," and prohibit extension of a seizure beyond its lawful duration. *Mom's Inc.*, 109 Fed. Appx. at 637; *see also Guerin*, 2014 WL 7205669, at *6 n.2 (emphasizing that the Fourth Amendment limits a police officer's conduct from the moment of the officer's entry into a home until the moment of departure).

In contrast, many other circuit courts have concluded that an officer's retention of lawfully seized property alone does not violate the Fourth Amendment. *See Case v. Eslinger*, 555 F.3d 1317 (11th Cir. 2009) (finding that defendant police officer's retention of lawfully seized property did not violate the Fourth Amendment); *Lee v. City of Chicago*, 330 F.3d 456, 458–59 (7th Cir. 2003) (finding that defendant conditioning the return of plaintiff's lawfully impounded car on the payment of fees did not violate the Fourth Amendment); *Fox v. Van Oosterum*, 176 F.3d 342, 344–351 (6th Cir. 1999) (finding that defendant detective's refusal to return a driver's license to a licensee after a lawful seizure did not violate the Fourth Amendment); *see also Ali v. Ramsdell*, 423 F.3d 810, 811–815 (8th Cir. 2005) (expressing "considerable doubt whether an allegation that property appropriately seized in executing a valid search warrant but not

inventoried and stored in the manner required by state law even states a claim under the Fourth Amendment," but upholding dismissal on other grounds); *Slider v. City of Oakland*, No. C 08–4847 SI, 2010 WL 2867807, at *4 (N.D. Cal. July 19, 2010) (finding that defendant police officers' alleged theft of plaintiff's property following a lawful search and seizure did not represent a Fourth Amendment violation). These courts generally reason that once the act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer governs. *See Lee*, 330 F.3d at 458–59 (finding that retention of property after a lawful search "neither continued the initial seizure nor began another"); *Fox*, 176 F.3d at 344–351 (6th Cir. 1999) (finding that refusal to return lawfully seized property "neither brought about an additional seizure nor changed the character of the [original] seizure from a reasonable one to an unreasonable one"). Thus, while a government agent's conversion of lawfully seized property may represent a breach of state law, such conduct does not implicate Fourth Amendment concerns after the time of the initial seizure.

In this regard, the court finds instructive the decision in *Slider v. City of Oakland*, No. C 08-4847 SI, 2010 WL 2867807 (N.D. Cal. July 19, 2010). In that case, the plaintiff brought a civil rights action in which he alleged that following a traffic stop, which ultimately resulted in his conviction for possession of a controlled substance, two police officers conducted an inventory search of his car and stole a MacBook Pro computer and a Sony Play Station (PSP) from his vehicle while falsely claiming that those items were in the vehicle when it was towed away. *See* 2010 WL 2867807, at *1–3. In his § 1983 complaint the plaintiff alleged a violation of his rights under the Fourth, Fifth and Fourteenth Amendments as well as various state law claims. *Id*. at *3. In granting summary judgment in favor of defendants as to plaintiff's Fourth Amendment claim, the district court stated:

> Plaintiff's . . . claim with respect to the Fourth Amendment is that the alleged theft of plaintiff's MacBook Pro and PSP constitutes an unreasonable seizure. The Fourth Amendment dictates that the right of a person to be "secure in [his] person[ ], houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Although the theft of plaintiff's MacBook Pro and PSP was unlawful (assuming arguendo it was committed by the defendant officers), the initial search and seizure of his

> property was not.  When a person is incarcerated, his personal possessions are routinely and lawfully seized and placed in official custody both to protect the detainee's possessions and to maintain security at the detention facility.  *See Hudson v. Palmer*, 468 U.S. 517, 540, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984) (O'Connor, J. concurring).  The theft following the initial search and seizure should therefore not be viewed as a constitutional violation, but rather as a tortious injury redressable under the state law of conversion.  *See id.*

Id. at *4.[6]

Absent binding Ninth Circuit precedent on this issue, and in light of the conflicting decisions from other circuits, the undersigned concludes that any alleged theft of property which was initially lawfully seized from plaintiffs pursuant to a valid search warrant did not violate their then clearly established Fourth Amendment rights.  *See Springer*, 398 Fed. Appx. at 434–35 (finding that, in light of conflicting judgments from circuit courts, the law with respect to this very issue under the Fourth Amendment was not clearly established for purposes of qualified immunity).[7]

Accordingly, defendants are entitled to summary judgment both on the merits and on qualified immunity grounds with respect to plaintiffs' Fourth Amendment claim that the officers exceeded the scope of the warrant in its execution.  In addition, defendants are entitled to

---

[6] "[I]f the act of taking possession and the indefinite retention of the property are themselves reasonable, the handling of the property while in the government's custody is not itself of Fourth Amendment concern. . . .  The loss, theft, or destruction of property so seized has not, to my knowledge ever been thought to state a Fourth Amendment claim[, and] missing property ha[s] long been redressable in tort by actions for . . . conversion."  *Hudson v. Palmer*, 468 U.S. 517, 538–39 (1984) (O'Connor, concurring).

[7] It is the case that in a decision issued on June 21, 2017 reviewing a city vehicle impoundment policy, the Ninth Circuit rejected the reasoning of the Seventh Circuit in *Lee*, and implicitly the Sixth Circuit decision in *Fox*, holding that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course" and that "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force" after which "the government must cease the seizure or secure a new justification."  *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).  It is far from certain that the holding in *Brewster* is sufficient to clearly establish that the theft by police of property which is lawfully seized pursuant to a warrant violates the Fourth Amendment.  However, even if it was, that recent precedent did not exist in September of 2013 and therefore cannot serve as the basis for the qualified immunity determination here.  *See Davis v. United States*, 854 F.3d 594, 599–600 (9th Cir. 2017) (the constitutional right must have been clearly established "at the time of [the] defendant's alleged misconduct.") (quoting *Pearson*, 555 U.S. at 232).

14

summary judgment on qualified immunity grounds with respect to plaintiffs' Fourth Amendment claim based upon the alleged theft of their property seized pursuant to the warrant.[8]

**B.      Section 1983 Substantive Due Process Claims**

Defendants also contend they are entitled to summary judgment with respect to plaintiffs' § 1983 substantive due process claims against the defendant Officers.

In relevant part, the Fourteenth Amendment commands that "no state . . . shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1. The Fourteenth Amendment has both a procedural and a substantive component.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Brittain v. Hansen*, 451 F.3d 982, 990–1000 (9th Cir. 2006).  To show a violation of substantive due process, a plaintiff must demonstrate that a government agent acted in a manner that "shocks the conscience," i.e. that they acted with a "purpose to harm."  *County of Sacramento*, 523 U.S. at 847; *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Porter v. Osborn*, 546 F.3d 1131, 1137–41 (9th Cir. 2008) (observing that courts should consider the totality of the circumstances when determining whether or not official conduct demonstrates a conscience-shocking purpose to harm).

The Fourteenth Amendment right to substantive due process protects liberties "deeply rooted in this Nation's history and tradition."  *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977).  "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims."

---

[8]  Having concluded that defendant Officers did not violate clearly established Fourth Amendment rights, the court does not reach a determination as to whether defendants' alleged theft of property seized during the search in fact violated the Fourth Amendment.  *See generally Saucier*, 533 U.S. at 201 (stating that a central question in determining applicability of qualified immunity is whether the constitutional right at issue was "clearly established" at the time of the alleged violation); *see also Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009) (holding that *Saucier*'s two-part analysis is "often beneficial" but not mandatory and recognizing that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right. ); *Sjurset v. Button*, 810 F.3d 609 (9th Cir. 2015) ("Recognizing the "general rule of constitutional avoidance . . . we now turn to the second prong of the *Saucier* test.").

*Albright v. Oliver*, 510 U.S. 266, 273 (1997) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007) (explaining that preemption under *Graham* occurs when a substantive due process claim "can be vindicated under a different—and more precise—constitutional rubric"). *But see generally Soldal*, 506 U.S. at 70 ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.").

Defendants argue that they are entitled to summary judgment with respect to plaintiffs' § 1983 claims substantive due process claims because the defendant Officers carried out their search in an objectively reasonable manner and plaintiffs have not presented evidence of conscience-shocking behavior on the part of defendants. (Doc. No. 51-1 at 16–17.) Defendants point to the following evidence in this regard: (i) the search warrant signed by the Fresno County Superior Court Judge authorizing the September 10, 2013 search, (Doc. No. 58 at 4, ¶ 8); and (ii) plaintiff Micah Jessop's deposition testimony wherein he acknowledged that the Fresno Police Department returned ten boxes of property to him following the search, (Doc. No. 53-1 at 109).

In opposition to defendants' summary judgment motion, plaintiffs argue that defendants' alleged actions—the theft of over $100,000 during the September 2013 search—rise to a conscience-shocking level sufficient to meet the standard for a Fourteenth Amendment substantive due process claim. (Doc. No. 57 at 14–16.) In this regard, plaintiffs rely upon the same evidence offered in support of their allegations of a Fourth Amendment violation. (*Id.*)

As a preliminary matter, the court observes that under Ninth Circuit precedent, the existence of a post-deprivation remedy does not bar plaintiffs' substantive due process claims.[9]

---

[9] The Supreme Court, in *Parratt* and its progeny, has found that the existence of a post-deprivation remedy will preclude a procedural due process claim challenging the government's "random and unauthorized" seizure of property. *See Zinermon v. Burch*, 494 U.S. 113, 136 (1990) (explaining that a government agent acts in a random and unauthorized manner if (i) their conduct was unforeseeable, (ii) their conduct was unauthorized and executed in violation of state procedure, and (iii) pre-deprivation procedures would have been impracticable under the circumstances). Though the Supreme Court has not directly addressed the issue, the Ninth Circuit has found that "[t]he *Parratt* rationale does not apply to a denial of substantive due process, for in such a case the deprivation is the taking of property or liberty itself, not the process by which the

*See Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1988) (acknowledging that where a defendant acts in an unauthorized and random manner in the course of violating a constitutional right, the availability of adequate post-deprivation remedies does not bar a substantive due process claim under § 1983).  Thus, while plaintiffs acknowledge in their opposition that they had access to an adequate post-deprivation remedy under California tort law (Doc. No. 57 at 9 n.1), this fact alone does not prevent plaintiffs from pursuing claims under § 1983 based on violations of their substantive due process rights.

Here, however, plaintiffs' substantive due process claims arise out of allegations that defendant Officers stole property seized by them pursuant to a facially valid warrant.  (Doc. No. 1 at 8–11.)  "The unreasonable retention of seized property is the type of government conduct for which the Fourth Amendment provides explicit limitations."  *Hansen v. Schubert*, No. CIV. S-02-0850 FCD GGH, 2007 WL 1029812, at *4 (E.D. Cal. April 2, 2007) (citing *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982)); *see also McPeak v. State of Arizona*, No. 2:15–cv–0027–HRH, 2015 WL 4647906, at *9 (D. Ariz. Aug. 5, 2015) (finding that plaintiff's allegations of excessive force and failure to return seized property "must be analyzed under the Fourth Amendment").  As such, the Fourth Amendment is the constitutional lens through which plaintiffs' allegations must be analyzed.  *See Armendariz v. Penman*, 75 F.3d 1311, 1321–22 (9th Cir. 1996) ("Graham . . . make[s] clear that any 'explicit source of constitutional protection' preempts a more generalized substantive due process claim") (citing *Graham*, 490 U.S. at 395), overruled on other grounds by *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856–57 (9th Cir. 2007).  Plaintiffs cannot maintain an independent Fourteenth Amendment substantive due process claim challenging the same government conduct challenged in their Fourth Amendment claim.  *See Schneider v. County of Sacramento*, No. S–12–2457 KJM KJN, 2014 WL 4187364, at *7–8 (E.D. Cal. Aug. 21, 2014) ("For *Graham* to apply, the claims would have

taking is accomplished, and the availability of neither pre nor post-deprivation process is relevant." *Mann v. City of Tucson*, 782 F.2d 790, 792 (9th Cir. 1985); *see also Taylor*, 871 F.2d at 804; *cf. Slider*, 2010 WL 2867807, at *6 (acknowledging binding Ninth Circuit precedent on the issue, but noting that "there is no clear rule as to whether *Parratt* and its progeny extend to substantive due process claims").

to target the same sort of governmental conduct") (internal quotation omitted); *see also Slider*, 2010 WL 2867807, at *7 (finding that defendants were entitled to summary judgment on plaintiff's substantive due process claim based on allegations that the defendant police officers stole lawfully seized property, because the Fourth Amendment provided an explicit textual source of constitutional protection against such conduct); *Tovar v. City of Fresno*, No. CV F 06-0351 LJO TAG, 2007 WL 2253605, at *11 (E.D. Cal. Aug. 3, 2007) (granting defendants summary judgment on plaintiff's substantive due process claim because "an alleged failure to observe the requirements of the Fourth Amendment will not support an independent claim for a failure of due process," despite finding no triable issue of material fact as to plaintiff's Fourth Amendment claims); *Hansen*, 2007 WL 1029812, at *4 (same).

Accordingly, defendants' motion for summary judgment with respect to plaintiffs' substantive due process claims will be granted.

**C.      Section 1983 Procedural Due Process Claims**

Defendants next argue that they are entitled to summary judgment on plaintiffs' § 1983 procedural due process claims against the defendant Officers.  In particular, defendants argue that plaintiffs' procedural due process claims fail as a matter of law because plaintiffs were afforded an adequate post-deprivation remedy.  (Doc. No. 51-1 at 15–16.)  Plaintiffs do not dispute defendants' arguments in this regard and, therefore, do not contest dismissal of their procedural due process claims.  (Doc. No. 57 at 9, n.1.)  Accordingly, the court will grant defendants motion for summary judgment with respect to those claims.

**D.      *Monell* Claim**

Defendants move for summary judgment on plaintiffs' § 1983 claim against defendant City of Fresno.

Municipalities and local government units may be sued under § 1983 for constitutional rights violations, and are not shielded from liability by the doctrine of qualified immunity.  *See Monell*, 436 U.S. at 690 ("Municipalities and other local government units . . . [are] among those persons to whom § 1983 applies"); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (observing that qualified immunity does not protect municipalities against § 1983 liability).

18

However, a municipal entity or its departments is liable under § 1983 only if a plaintiff can show that the constitutional injury was caused by employees acting pursuant to the municipality's policy or custom.  *Monell*, 436 U.S. at 690–694; *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008).  A plaintiff can demonstrate the existence of an unlawful municipal policy or custom by presenting evidence of:  (i) a facially unconstitutional government policy, or an unconstitutional, "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (ii) a violation caused by an individual with final policy-making authority; or (iii) an individual with final policy-making authority ratifying a subordinate's unconstitutional action and the basis for it.  *Gillette v. Delmore*, 979 F.2d 1342, 1346–7 (9th Cir. 1992).  After proving that at least one of these three circumstances exists, a plaintiff must also identify evidence of direct and proximate causation.  *City of Canton*, *Ohio v. Harris* 489 U.S. 378, 389 (1989); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

For a municipality to be liable under § 1983 based on a theory of ratification, a plaintiff must show that:  (i) an individual with final policymaking authority (ii) ratified (iii) a subordinate's unconstitutional action and the basis for that action.  *Gillette*, 979 F.2d at 1348. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) ("To determine whether a school district employee is a final policymaker, we look first to state law.").  The fact that a particular official has discretion to make final decisions for a municipality under state law does not, without more, give rise to municipal liability.  *See Gillette*, 979 F.2d at 1349; *Hansen v. City of San Francisco*, No. 12-cv-04210-JST, 2014 WL 1310282, at *7 (N.D. Cal. Mar. 31, 2014) ("The fact that a city employee has independent decision-making power does not render him a final policymaker for purposes of municipal liability.").

For a municipality to be liable under § 1983 based on a "longstanding practice or custom," the custom in question must be so "persistent and widespread" that it constitutes a "permanent and well-settled city policy."  *Trevino*, 99 F.3d at 918.  Evidence of a single constitutional violation is ordinarily insufficient to establish a longstanding practice or custom.  *See Christie v. Lopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–

1234 (9th Cir. 1989); *see also Trevino*, 99 F.3d at 918 (evidence of "sporadic incidents" is

insufficient to establish municipal liability under § 1983). In other words, municipalities "cannot

be held liable solely because [they employ] a tortfeasor," and "cannot be held liable under § 1983

on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To support municipal liability under

§ 1983, the custom that is alleged to exist must also have been adopted in deliberate indifference

to the rights asserted by the plaintiff. *See Bryan Cty. v. Brown*, 520 U.S. 397, 403–404, 407

(1997) (noting that "'deliberate indifference' is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action.").

      In limited circumstances, a local government's failure to train or supervise employees may

rise to the level of official government policy sufficient to support municipal liability under

§ 1983. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (stating that a local governmental

entity may violate § 1983 if it has a "policy of inaction and such inaction amounts to a failure to

protect constitutional rights"); *cf. Connick v. Thompson*, 53 U.S. 51, 61 (2011) ("A municipality's

culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to

train."). A pattern of similar constitutional violations by untrained employees is "ordinarily

necessary" to demonstrate a persistent and widespread municipal policy of inadequate training.

*Bryan Cty.*, 520 U.S. at 409. Moreover, a municipality can only be liable under § 1983 for a

policy of inadequate training when the failure to train is deliberately indifferent, that is, where the

failure to train reflects a deliberate or conscious choice. *City of Canton*, 489 U.S. at 389–91, 407

(stating that "when city policymakers are on actual or constructive notice that a particular

omission in their training program causes city employees to violate citizens' constitutional rights,

the city may be deemed deliberately indifferent if the policymakers choose to retain that

program"); *see also Connick*, 563 U.S. at 61–62 (explaining that a city's policy of inaction in

light of notice that its program will cause constitutional violations "is the functional equivalent of

a decision by the city itself to violate the Constitution").

      Here, defendants argue that they are entitled to summary judgment on plaintiffs' claim

under § 1983 against defendant City of Fresno because there is no evidence before the court on

summary judgment that plaintiffs' constitutional rights were violated during the September 10,

2013 search.  (Doc. No. 51-1 at 20.)  Defendants also contend that, in any event, plaintiffs have not and cannot demonstrate that defendant Officers had final policymaking authority or that defendant City of Fresno maintained a longstanding policy of performing unconstitutional searches and seizures.  (*Id.* at 19–20.)  Plaintiffs counter by arguing that defendants are not entitled to summary judgment on their *Monell* claim because they withheld pertinent evidence during discovery, and because there is a genuine, material dispute as to whether the defendant City of Fresno maintained unconstitutional policies or customs sufficient to support *Monell* liability.  (Doc. No. 57 at 16, 25.)

In their complaint, plaintiffs allege municipal liability based on two principal grounds.  First, plaintiffs assert that an individual with final policymaking authority ratified unconstitutional behavior by defendant Officers.  (*Id.* at 13.)  Second, plaintiffs allege that defendant City of Fresno maintained a longstanding custom or policy of (i) employing and retaining of police officers with a history of engaging in misconduct, (ii) inadequately training and supervising officers; (iii) failing to appropriately discipline officers; and (iv) maintaining inadequate procedures for training, supervising, and disciplining officers.  (*Id.* at 11–14.)

With respect to the ratification theory of municipal liability, plaintiffs have not produced any evidence supporting their allegations on summary judgment.  Plaintiffs' complaint does not clearly identify a final policymaking authority whose decisions could be attributed to the defendant City of Fresno, alleging only that "Defendant CITY . . . knowingly maintained, enforced, and applied an official recognized custom . . . [of] ratifying the intentional misconduct of [defendant] Officers."  (Doc. No. 1 at 11–13.)  In their opposition to defendants' summary judgment motion, plaintiffs assert that defendant Chastain represented a "final policymaker" whose acts are sufficient to serve as a basis for municipal liability.  (Doc. No. 57 at 18 n.3.)  However, "[n]ew argument or allegations in a summary judgment opposition do not raise triable issues of fact."  *Fernandez v. McKnight*, No. 1:12–cv–557–BAM, 2014 WL 352238, at *2, n.7 (E.D. Cal. Jan. 31, 2014); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (explaining that on summary judgment, the court will not consider new arguments or allegation raised outside of the operative pleadings).

In any event, plaintiffs' contention that defendant Chastain represented a "final policymaking authority" for the defendant City of Fresno is unpersuasive. Plaintiffs argue that defendant Chastain represented a "final policymaker" because he had a supervisory role as a sergeant of the Police Department Vice Unit, citing deposition testimony from defendant Chastain in which he explained his responsibilities within that police unit. (Doc. No. 57 at 18 n.3.) It has been recognized that under California law, however, police sergeants are not responsible for establishing final department policies for their department. *See Collins v. City of San Diego*, 841 F. 2d 337, 341 (9th Cir. 1988) ("Although a police sergeant may have discretion to recommend hiring, firing, and discipline of employees, he or she is not the city official responsible for establishing final department policy in [the employment] area."); *see also* Cal. Gov't Code § 38630 ("The police department of a city is under the control of the chief of police."); *Hansen*, 2014 WL 1310282, at *7 (observing that, while the Chief of Police has a final policymaking role for many employment policies, the city charter may assign certain employment responsibilities to other government entities such as the City Police Commission). Thus, even if the court were to consider the arguments raised by plaintiffs for the first time in their opposition to summary judgment, defendant Chastain does not represent a "final policymaking authority" whose actions can give rise to municipal liability.

As to their second theory of *Monell* liability, plaintiffs also have failed to come forward with any evidence on summary judgment of a "persistent and widespread" pattern of unconstitutional behavior by municipal employees. In support of their opposition to the pending motion, plaintiffs have provided no evidence that other officers with a history of misconduct were employed and retained by defendant City of Fresno. Plaintiffs also offer no evidence that the training programs of the Fresno Police Department were deficient, or that untrained officers employed by the defendant City of Fresno carried out other improper searches and seizures as allegedly occurred here. Thus, even assuming that the September 10, 2013 search was unconstitutional, plaintiffs cannot meet their burden of showing a genuine dispute of material fact as to the existence of a longstanding practice or custom supporting *Monell* liability here. *See Christie v. Lopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional violation is

ordinarily insufficient to establish a longstanding practice or custom."); *see also Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("[O]ur *Monell* decisions . . . have recognized that liability for improper custom may not be predicated on isolated or sporadic incidents and that the custom must be so persistent and widespread that it constitutes a permanent and well-settled city policy.") (internal citations omitted).

Plaintiffs' discovery-related arguments are clearly insufficient to create a triable issue of fact as to defendant City of Fresno's § 1983 liability. Plaintiffs assert for the first time in their opposition to summary judgment that defendants withheld information about allegedly unconstitutional customs and policies maintained by the City of Fresno. (Doc. No. 57 at 16.) In particular, plaintiffs argue that defendants did not disclose evidence regarding defendant Chastain's knowledge of other improper actions carried by defendants Kumagai and Cantu before the September 10, 2013 search. (*Id.* at 22–24.) However, discovery in this case has long been closed under the court's scheduling order, and during the time permitted under that order, plaintiffs did not file any motions to compel discovery on this issue. (*See* Doc. No. 48) (setting the deadline for the close of discovery for September 30, 2016). Plaintiffs cannot now avoid summary judgment by invoking a discovery dispute at the "proverbial eleventh hour." *U.S. ex rel. Jajdelski v. Kaplan, Inc.*, No. 2:05-CV-01054-KJD-GWF, 2015 WL 1034055, at *4 (D. Nev. Mar. 9, 2015) (rejecting plaintiff's argument that the court should deny defendant's motion for summary judgment because defendant withheld discovery, since plaintiff was not diligent in pursuing previous discovery opportunities).[10]

Defendants do not bear the burden of proof on these issues at trial, and thus need only point to the insufficiency of plaintiffs' evidence to meet their burden at the summary judgment stage of this litigation. *Celotex*, 477 U.S. at 325. They have done so. Given plaintiffs' failure to produce evidence supporting their allegations of municipal liability in opposition to defendants' motion, the court finds that defendant City of Fresno is entitled to summary judgment with

---

[10] As noted above, defendant Chastain is not a "final policymaker" for defendant City of Fresno. Thus, any evidence that defendant Chastain knew of past misconduct by subordinate officers would not, by itself, create a genuine issue of material fact as to *Monell* liability.

respect to the § 1983 *Monell* claims brought against it.

**CONCLUSION**

For all of the reasons set forth above:

1. Defendants' motion for summary judgment (Doc. No. 51) as to all of plaintiffs' claims is granted; and

2. The Clerk of the Court is directed to enter judgement in favor of defendants and close this case.

IT IS SO ORDERED.

Dated:   **July 31, 2017**

_____
UNITED STATES DISTRICT JUDGE